UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| CAROL GLOCK, Individually and on Behalf of All Others Similarly Situated, | § § § | Civil Action No. 4:20-cv-03928 |
| | § | Judge:  Lee H. Rosenthal |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| FTS INTERNATIONAL, INC., et al., | § § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

**STIPULATION OF SETTLEMENT**

This Stipulation of Settlement, dated November 19, 2020 (the "Stipulation"), is made and entered into by and among: (i) Lead Plaintiff Carol Glock ("Glock" or "Lead Plaintiff") (on behalf of herself and each Settlement Class Member), by and through her counsel of record in the Litigation; and (ii) Defendants FTS International, Inc. ("FTSI," or "Debtor Settling Defendant"), Michael J. Doss, Lance Turner, Goh Yong Siang, Boon Sim, Domenic J. Dell'Osso, Jr., Bryan J. Lemmerman, Ong Tiong Sin, Carol J. Johnson, Maju Investments (Mauritius) Pte Ltd, Credit Suisse Securities (USA) LLC, and Morgan Stanley & Co. LLC (together, the "Non-Debtor Settling Defendants," and together with the Debtor Settling Defendant, the "Settling Defendants"), by and through their counsel of record in the Litigation.[1]  This Stipulation is intended to fully, finally, and forever resolve, discharge, release and settle the Released Claims, subject to the approval of the Court and the terms and conditions set forth in this Stipulation.

## I.      THE LITIGATION

The Litigation is currently pending in the United States District Court for the Southern District of Texas (the "Court").  The initial petition in this action was filed in February 2019 in the 160th Judicial District Court of the State of Texas (the "State Court").  By order dated July 15, 2019, the State Court appointed Kendall Law Group, PLLC as liaison counsel, and Robbins Geller Rudman & Dowd LLP and Johnson Fistel, LLP as interim lead counsel (together, "Lead Counsel").

Lead Plaintiff filed the Amended Petition for Violation of the Securities Act of 1933 and Demand for Jury Trial (the "Amended Petition") in the State Court on September 16, 2019, against Settling Defendants, Chesapeake Energy Corporation ("Chesapeake"), and CHK Holdings, Inc. ("CHK Holdings," and with Chesapeake, the "Chesapeake Defendants"), alleging that the Settling Defendants and the Chesapeake Defendants failed in their obligations to provide true and fulsome

---

[1]     All capitalized terms not otherwise defined shall have the meanings ascribed to them in §IV.1 herein.

disclosures in the Registration Statement for FTSI's initial public offering ("IPO") of common stock on February 2, 2018.

On June 18, 2020, Lead Plaintiff filed a notice of dismissal without prejudice as to the Chesapeake Defendants, and the Chesapeake Defendants were consequently dismissed from the Litigation without prejudice.

In July 2020, the Settling Defendants filed a Notice of Removal of the Litigation from the State Court to the Bankruptcy Court for the Northern District of Texas.  On September 16, 2020, the Bankruptcy Court for the Northern District of Texas entered an order transferring the Litigation to the Bankruptcy Court for the Southern District of Texas ("Bankruptcy Court"), under Adv. Pro. No. 20-03416.  Adv. Doc. No. 41.

On July 29, 2020, Lead Plaintiff filed a Motion to Remand the Litigation to the State Court. Adv. Doc. No. 21.

On September 22, 2020, FTSI, FTS International Manufacturing, LLC, and FTS International Services, LLC (collectively, the "Debtors") commenced Chapter 11 cases (Case No. 20-34622, the "Chapter 11 Cases") in the Bankruptcy Court and filed the plan or reorganization (the "Plan") (Case No. 20-34622, as most recently amended, Docket No. 285) and a proposed disclosure statement (the "Disclosure Statement") (Case No. 20-34622, Docket No. 17) for the Plan.

On November 4, 2020, the Bankruptcy Court entered an order (the "Confirmation Order) (Case No. 20-34622, Docket No. 297) approving the Disclosure Statement and the Plan.

Prior to the commencement of the Chapter 11 Cases, on March 30, 2020, the parties engaged the services of David Murphy of Phillips ADR, an experienced mediator, to facilitate settlement negotiations.  On April 29, 2020, the parties engaged in a video conference mediation session with Mr. Murphy.  Before the mediation, the parties submitted and exchanged statements with detailed descriptions of their claims and defenses and supporting evidence.  The case did not settle, but the

parties continued settlement discussions with the assistance of Mr. Murphy.  On October 16, 2020, the parties accepted a mediator's proposal from Mr. Murphy to resolve the Litigation for a cash payment of $9.875 million to be paid by Debtor Settling Defendant and its insurance carriers on behalf of Settling Defendants and their Related Parties, as defined below (including, but not limited to, the Chesapeake Defendants), for the benefit of the Settlement Class, subject to the negotiation of the terms of a Stipulation of Settlement and approval by the Court.  On October 23, 2020, the Settling Parties entered into a Memorandum of Understanding.  On November 18, 2020, the Litigation was transferred from the Bankruptcy Court to this Court.  This Stipulation (together with the Exhibits hereto) reflects the final and binding agreement between the Settling Parties to fully resolve the Litigation.

## II.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Throughout this Litigation, Settling Defendants have denied, and continue to deny, any and all allegations of fault, liability, wrongdoing, or damages whatsoever.  Settling Defendants have expressly denied, and continue to deny, that they have committed any act or omission giving rise to any liability under Sections 11 and/or 15 of the Securities Act of 1933.  Specifically, Settling Defendants have expressly denied, and continue to deny, each and every of the claims alleged by Lead Plaintiff in the Litigation, including, without limitation, any liability arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Litigation. Settling Defendants also have denied, and continue to deny, among other allegations, the allegations that Lead Plaintiff or the Settlement Class have suffered any damages, that Settling Defendants made any false or misleading statements in the Registration Statement, or that Lead Plaintiff or the Settlement Class was harmed by the conduct alleged in the Litigation, or that could have been alleged as part of the Litigation.  In addition, Settling Defendants maintain that they have meritorious defenses to all claims alleged in the Litigation.

As set forth below, neither the Settlement nor any of the terms of this Stipulation shall in any event be construed or deemed to be evidence of or constitute an admission, concession, or finding of any fault, liability, wrongdoing, or damage whatsoever or any infirmity in the defenses that Settling Defendants have, or could have, asserted.  Settling Defendants have concluded that further conduct of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation. Settling Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially in complex cases such as this Litigation.  Settling Defendants have determined that it is desirable and beneficial to them that the Litigation be settled in the manner and upon the terms and conditions set forth in this Stipulation.

## III.    LEAD PLAINTIFF'S CLAIMS AND THE BENEFITS OF SETTLEMENT

Lead Plaintiff believes that the claims asserted in the Litigation have merit and that the evidence developed to date supports her claims.  However, Lead Plaintiff and her counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against Settling Defendants through trial and through appeals.  Lead Plaintiff and her counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in such litigation.  Lead Plaintiff and her counsel also are mindful of the inherent problems of proof under and possible defenses to the securities law violations asserted in the Litigation.  Lead Plaintiff believes that the Settlement set forth in this Stipulation confers substantial benefits upon the Settlement Class.  Based on their evaluation, Lead Plaintiff and her counsel have determined that the Settlement set forth in this Stipulation is in the best interests of Lead Plaintiff and the Settlement Class.

4853-0783-9951.v5

**IV.     TERMS OF THE STIPULATION AND AGREEMENT OF SETTLEMENT**

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Lead

Plaintiff (for herself and the Settlement Class Members) and Settling Defendants and the Chesapeake

Defendants, by and through their counsel or attorneys of record, that, subject to court approval

pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, and subject to any approvals that

may be required from the Bankruptcy Court in the Chapter 11 Cases or in *In re Chesapeake Energy

Corp.*, Civil Action No. 20-33233 (Jointly Administered) (the "Chesapeake Chapter 11 Cases"), the

Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and

the Litigation shall be dismissed with prejudice, as to all Settling Parties and the Chesapeake

Defendants, upon and subject to the terms and conditions of this Stipulation, as follows:

    **1.     Definitions**

As used in this Stipulation the following terms, when capitalized, have the meanings

specified below:

    1.1     "Authorized Claimant" means any Settlement Class Member whose claim for

recovery has been allowed pursuant to the terms of this Stipulation.

    1.2     "Chesapeake Defendants" means Chesapeake Energy Corporation ("Chesapeake")

and CHK Holdings, Inc. ("CHK Holdings").

    1.3     "Claim(s)" means a paper claim submitted on a Proof of Claim and Release form or

an electronic claim that is submitted to the Claims Administrator.

    1.4     "Claims Administrator" means the firm of Gilardi & Co. LLC.

    1.5     "Effective Date," or the date upon which this Settlement becomes "effective," means

the first date by which all of the events and conditions specified in ¶7.1 of the Stipulation have been

met and have occurred or have been waived.

1.6     "Escrow Agent" means the law firm of Robbins Geller Rudman & Dowd LLP or its successor(s).

1.7     "Final" means when the last of the following with respect to the Judgment approving this Stipulation, substantially in the form of Exhibit B attached hereto, shall occur:  (i) the expiration of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) without any such motion having been filed; (ii) the expiration of the time for the filing or noticing of any appeal from the Judgment without any appeal having been taken; and (iii) if a motion to alter or amend is filed or if an appeal is taken, immediately after the final determination of that motion or appeal such that no further judicial review or appeal is permitted, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of the appeal or otherwise in such a manner as to permit the consummation of the Settlement, substantially in accordance with the terms and conditions of this Stipulation.  For purposes of this paragraph, an "appeal" shall include any petition for a writ of *certiorari* or other vehicle for review that may be filed in connection with approval or disapproval of this Settlement.  Any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to: (i) attorneys' fees, costs, or expenses; (ii) the Plan of Allocation (as submitted or subsequently modified); or (iii) the procedures for determining Authorized Claimants' recognized claims, shall not in any way delay, affect, or preclude the time set forth above for the Judgment to become Final, or otherwise preclude the Judgment from becoming Final.

1.8     "Individual Defendants" means Michael J. Doss, Lance Turner, Goh Yong Siang, Boon Sim, Domenic J. Dell'Osso, Jr., Bryan J. Lemmerman, Ong Tiong Sin, and Carol J. Johnson.

1.9     "Judgment" means the Order and Final Judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit B.

- 6 -

1.10    "Lead Counsel" means the law firms of Robbins Geller Rudman & Dowd LLP and Johnson Fistel, LLP.

1.11    "Lead Plaintiff" means Carol Glock.

1.12    "Lead Plaintiff's Counsel" means Robbins Geller Rudman & Dowd LLP, Johnson Fistel, LLP and Kendall Law Group, PLLC.

1.13    "Litigation" means the action captioned *Carol Glock v. FTS International, Inc., et al.*, Case No. 4:20-cv-03928 (S.D. Tex.).

1.14    "Net Settlement Fund" means the Settlement Fund less: (i) any Court-awarded attorneys' fees, expenses, and interest thereon; (ii) Notice and Administration Expenses; (iii) Taxes and Tax Expenses; and (iv) other Court-approved deductions.

1.15    "Person" means an individual, corporation (including all divisions and subsidiaries), limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and all of their respective spouses, heirs, beneficiaries, executors, administrators, predecessors, successors, representatives, or assignees.

1.16    "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund through which the Net Settlement Fund shall be distributed to Authorized Claimants.  Any Plan of Allocation is not part of this Stipulation and neither Settling Defendants nor their Related Parties (including, without limitation, the Chesapeake Defendants) shall have any responsibility or liability with respect thereto.

1.17    "Proof of Claim and Release" means the Proof of Claim and Release form for submitting a Claim, which, subject to approval of the Court, shall be substantially in the form attached hereto as Exhibit A-2.

4853-0783-9951.v5

1.18    "Related Parties" means Settling Defendants and their current and former parent entities, business units, business divisions, affiliates or subsidiaries, shareholders who are not members of the Settlement Class, including, without limitation, CHK Energy Holdings, Inc. and Chesapeake Energy Corporation, any underwriter in the IPO regardless of whether they were named individually as defendants in the Litigation, and each and all of their current and former officers, directors, attorneys, employees, agents, trustees, parents, affiliates, subsidiaries, financial or investment advisors, consultants, accountants, investment bankers, commercial bankers, insurers, engineers, advisors, heirs, executors, trustees, general or limited partners or partnerships, personal representatives, estates, administrators, and each of their successors, predecessors, assigns, and assignees, and any of the Individual Defendants' immediate family members, and any of their attorneys.

1.19    "Released Claims" means any and all claims, demands, losses, rights, and causes of action of any nature whatsoever, whether known or unknown, whether individual, class, direct, derivative, representative, or of any other type or in any other capacity, whether brought directly or indirectly against any Released Defendant Party, that: (i) Lead Plaintiff or any other member of the Settlement Class asserted or could have asserted in the Litigation, or could in the future assert in any forum, whether foreign or domestic, whether arising under federal, state, common, or foreign law, whether based on statements or omissions made directly to individual persons or broadly to the market, that arise out of or are based upon or relate in any way to any of the allegations, acts, facts, transactions, statements, events, matters, occurrences, representations or omissions involved, set forth or referred to in the Litigation; and (ii) relate in any way to the purchase or acquisition of FTSI common stock.  "Released Claims" includes "Unknown Claims," as defined in ¶1.33 hereof.

1.20    "Released Defendants' Claims" means any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims,

whether arising under federal, state, local, common, statutory, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against the Settling Defendants and the Released Defendant Parties, including the Chesapeake Defendants, except for claims relating to the enforcement of the Settlement.

1.21    "Released Defendant Party" or "Released Defendant Parties" means Settling Defendants and their Related Parties (including, without limitation, the Chesapeake Defendants).

1.22    "Releasing Plaintiff Party" or "Releasing Plaintiff Parties" means each and every Settlement Class Member, Lead Plaintiff, Lead Counsel, Lead Plaintiff's Counsel, and each of their respective past or present trustees, officers, directors, partners, employees, contractors, auditors, principals, agents, attorneys, administrators, executors, predecessors, successors, assigns, representatives, insurers, parents, subsidiaries, general or limited partners or partnerships, and limited liability companies; and in addition the spouses, members of the immediate families, representatives, and heirs of any Releasing Plaintiff Party who is an individual, as well as any trust of which any Releasing Plaintiff Party is the settlor or which is for the benefit of any of their immediate family members.  Releasing Plaintiff Parties do not include any Person who timely and validly seeks exclusion from the Settlement Class.

1.23    "Settlement" means the resolution of the Litigation in accordance with the terms and provisions of this Stipulation.

1.24    "Settlement Amount" means Nine Million Eight Hundred Seventy-Five Thousand Dollars ($9,875,000) in cash to be paid by check or wire transfer to the Escrow Agent pursuant to ¶2.2 of this Stipulation.

1.25    "Settlement Class" means all Persons who purchased FTSI common stock in or traceable to FTSI's IPO, including all Persons who purchased or acquired FTSI common stock on or

4853-0783-9951.v5

after February 2, 2018.  Excluded from the Settlement Class are Settling Defendants and the Related Parties; the officers and directors of the Settling Defendants and the Related Parties at all relevant times; members of their immediate families and their legal representatives, heirs, successors or assigns; and any entity in which Settling Defendants have or had a controlling interest.  Also excluded from the Settlement Class is any Settlement Class Member that validly and timely requests exclusion in accordance with the requirements set by the Court.

1.26    "Settlement Class Member" or "Member of the Settlement Class" mean a Person who falls within the definition of the Settlement Class as set forth in ¶1.24 above.

1.27    "Settlement Class Period" means the period from February 2, 2018 through February 21, 2019, inclusive.

1.28    "Settlement Fund" means the Settlement Amount plus all interest and accretions thereto.

1.29    "Settlement Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

1.30    "Settling Defendants" means FTS International, Inc., Michael J. Doss, Lance Turner, Goh Yong Siang, Boon Sim, Domenic J. Dell'Osso, Jr., Bryan J. Lemmerman, Ong Tiong Sin, Carol J. Johnson, Maju Investments (Mauritius) Pte Ltd, Credit Suisse Securities (USA) LLC, and Morgan Stanley & Co. LLC.

1.31    "Settling Defendants' Counsel" means the law firms of Baker Botts L.L.P., Tillotson Law, Latham & Watkins LLP, and Akin Gump Strauss Hauer & Feld LLP.

1.32    "Settling Parties" means, collectively, Lead Plaintiff and the Settling Defendants, as well as Lead Plaintiff's and the Settling Defendants' agents, servants, employees, representatives, affiliates, heirs, and attorneys, and the Settlement Class.

1.33    "Tax" or "Taxes" mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority, including, but not limited to, any local, state, and federal taxes.

1.34    "Unknown Claims" means (a) any and all Released Claims which the Releasing Plaintiff Parties do not know or suspect to exist in his, her, or its favor at the time of the release of the Released Defendant Parties, which, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Defendant Parties, or might have affected his, her, or its decision(s) with respect to the Settlement, including, but not limited to, whether or not to object to this Settlement or seek exclusion from the Settlement Class; and (b) any and all Released Defendants' Claims that the Released Defendant Parties do not know or suspect to exist in his, her, or its favor at the time of the release of the Lead Plaintiff, Lead Plaintiff's Counsel, or any Settlement Class Members, which, if known by him, her, or it, might have affected his, her, or its settlement and release of Lead Plaintiff, Lead Plaintiff's Counsel, or Settlement Class Members. With respect to any and all Released Claims and Released Defendants' Claims, the Settling Parties stipulate and agree that, upon the Effective Date, the Settling Parties shall expressly waive and each Releasing Plaintiff Party and Released Defendant Party shall be deemed to have, and by operation of the Judgment shall have expressly waived, the provisions, rights, and benefits of California Civil Code §1542, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

The Settling Parties shall expressly waive and each Releasing Plaintiff Party and Released Defendant Party shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United

- 11 -

States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542.  The Releasing Plaintiff Parties and Released Defendant Parties acknowledge that they may hereafter discover facts in addition to or different from those which Releasing Plaintiff Parties, Released Defendant Parties, or their counsel now know or believe to be true with respect to the subject matter of the Released Claims or Released Defendants' Claims, but the Settling Parties shall expressly fully, finally, and forever waive, compromise, settle, discharge, extinguish and release, and each Releasing Plaintiff Party and Released Defendant Party shall be deemed to have waived, compromised, settled, discharged, extinguished, and released, and upon the Effective Date, and by operation of the Judgment shall have waived, compromised, settled, discharged, extinguished, and released, fully, finally, and forever, any and all Released Claims and Released Defendants' Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities.  The Settling Parties acknowledge, and the Releasing Plaintiff Parties and Released Defendant Parties shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement of which this release is a part.

## 2.      The Settlement

2.1      The obligations incurred pursuant to the Stipulation are: (a) subject to approval by the Court and the Judgment, reflecting such approval, becoming Final; (b) subject to any additional Bankruptcy Court approval required in the Chapter 11 Cases or in the Chesapeake Chapter 11 Cases;

and (c) in full and final disposition of the Litigation with respect to the Releasing Plaintiff Parties and Released Defendant Parties and any and all Released Claims and Released Defendants' Claims.

### b.      The Settlement Amount

2.2      In full and final settlement of the claims asserted in the Litigation against Settling Defendants and their Related Parties, and in consideration of the releases specified in ¶4 herein, Debtor Settling Defendant and its insurance carriers on behalf of all Settling Defendants and their Related Parties (including, but not limited to, the Chesapeake Defendants) shall (subject to and following receipt of any Bankruptcy Court approval required in the Chapter 11 Cases or in the Chesapeake Chapter 11 Cases) cause the Settlement Amount to be paid by check or wire transfer on or before thirty (30) calendar days after the later of: (a) date of entry by the Court of the Preliminary Approval Order (defined below); and (b) Lead Plaintiff's Counsel's provision to Settling Defendants' Counsel with complete instructions for payment by wire transfer or check, as well as a Form W-9. The Escrow Agent shall deposit the Settlement Amount plus any accrued interest in a segregated escrow account (the "Escrow Account") maintained by the Escrow Agent.

2.3      If the entire Settlement Amount is not timely paid to the Escrow Agent, Lead Counsel may terminate the Settlement, but only if: (i) Lead Counsel has notified Settling Defendants' Counsel in writing of Lead Counsel's intention to terminate the Settlement; and (ii) the entire Settlement Amount is not transferred to the Escrow Account within five (5) business days after Lead Counsel has provided such written notice.

2.4      Other than the obligation of the Debtor Settling Defendant and its insurance carriers to pay or cause to be paid the Settlement Amount into the Settlement Fund set forth in ¶2.2 herein, the Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to: (i) any act, omission, or determination by Lead Counsel or the Claims Administrator, or any of their respective designees, in connection with the administration of the Settlement or

otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation, or payment of any Claims asserted against the Settlement Fund; (v) any loss suffered by, or fluctuation in value of, the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund, distributions or other payments from the Escrow Account, or the filing of any federal, state, or local returns.

2.5     Other than the obligation of the Debtor Settling Defendant and its insurance carriers to cause the payment of the Settlement Amount pursuant to ¶2.2, Settling Defendants shall have no obligation to make any other payments into the Escrow Account or to any Settlement Class Member pursuant to the Stipulation.

### c.     The Escrow Agent

2.6     The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶2.2 hereof in United States Agency or Treasury Securities or other instruments backed by the Full Faith & Credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund, and the Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent.

2.7     The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the prior written agreement of Settling Defendants' Counsel.

4853-0783-9951.v5

2.8     Subject to further order(s) and/or directions as may be made by the Court, or as provided in this Stipulation, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Stipulation.  The Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent, or any transaction executed by the Escrow Agent.

2.9     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Stipulation and/or further order(s) of the Court.

2.10    Notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Lead Counsel may pay from the Settlement Fund, without further approval from Settling Defendants and/or order of the Court, all reasonable costs and expenses actually incurred in connection with providing notice of the Settlement to the Settlement Class by mail, publication, and other means, locating Settlement Class Members, assisting with the submission of Claims, processing Proof of Claim and Release forms, administering the Settlement, and paying escrow taxes, fees and costs, if any ("Notice and Administration Expenses").

2.11    It shall be Lead Counsel's responsibility to disseminate the Notice, Proof of Claim and Release, and Summary Notice to the Settlement Class in accordance with this Stipulation and as ordered by the Court.  The Released Defendant Parties shall have no responsibility for or liability whatsoever with respect to the Notice and Administration Expenses, nor shall they have any responsibility or liability whatsoever for any claims with respect thereto.

### d.     Taxes

2.12    (a)     The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1, and the regulations promulgated thereunder.  The Settling Parties and the Escrow Agent further agree

4853-0783-9951.v5

that the Settlement Fund shall be established pursuant to the Court's subject matter jurisdiction within the meaning of Treas. Reg. §1.468B-1(c)(1).  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.12, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)     For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" (as defined in Treas. Reg. §1.468B-2(k)(3)) shall be the Escrow Agent.  The Escrow Agent shall timely and properly file all informational and other federal, state, or local tax returns necessary or advisable with respect to the earnings on the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)).  Such returns (as well as the elections described in ¶2.12(a) hereof) shall be consistent with this ¶2.12 and in all events shall reflect that all Taxes (including any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.12(c) hereof.

(c)     All (i) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Defendant Parties or their counsel with respect to any income earned by the Settlement Fund for any period, after the deposit of the Settlement Amount, during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (ii) expenses and costs incurred in connection with the operation and implementation of this ¶2.12 (including, without limitation, expenses of tax attorneys and/or

- 16 -

accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶2.12) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Released Defendant Parties and their counsel shall have no liability or responsibility whatsoever for the Taxes or the Tax Expenses.  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(l)(2)); neither the Released Defendant Parties nor their counsel are responsible nor shall they have any liability for any Taxes or Tax Expenses.  The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.12.

2.13    This is not a claims-made settlement.  As of the Effective Date, the Released Defendant Parties, and/or any other Person funding the Settlement on their behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason, and shall not have liability should claims made exceed the amount available in the Settlement Fund for payment of such Claims.  The Released Defendant Parties shall not be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for the payment of claims, Taxes, legal fees, or any other expenses payable from the Settlement Fund.

### e.    Termination of Settlement

2.14    In the event that this Stipulation is not approved or the Settlement is not approved (including in the event any approval required in connection with the Chapter 11 Cases or in the Chesapeake Chapter 11 Cases is not granted), or is terminated, canceled, or the Effective Date

otherwise fails to occur for any reason, including, without limitation, in the event the Judgment is reversed or vacated or materially altered following any appeal taken therefrom, or is successfully collaterally attacked, the Settlement Fund less Notice and Administration Expenses or Taxes or Tax Expenses paid, incurred, or due and owing pursuant to ¶¶2.10 and 2.12 hereof in connection with the Settlement provided for herein, shall be refunded pursuant to written instructions from Settling Defendants' Counsel in accordance with ¶7.6 herein.

### 3.  Preliminary Approval Order and Settlement Hearing

3.1     After execution of this Stipulation, as soon as practicable, Lead Counsel shall submit this Stipulation together with its Exhibits to the Court and shall apply for entry of an order (the "Preliminary Approval Order"), substantially in the form of Exhibit A attached hereto, requesting, *inter alia*, the preliminary approval of the Settlement set forth in this Stipulation and approval for the mailing of a settlement notice (the "Notice") and publication of a summary notice ("Summary Notice"), substantially in the forms of Exhibits A-1 and A-3 attached hereto.  The Notice shall include the general terms of the Settlement set forth in this Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application, as defined in ¶6.1 hereof, and the date of the Settlement Hearing.

3.2     FTSI shall facilitate Lead Plaintiff's acquisition from FTSI's transfer agent, American Stock & Trust Transfer Company, LLC, reasonably available transfer records in electronic searchable form, such as Excel, containing the names and addresses of Persons who purchased or otherwise acquired FTSI publicly traded common stock during the Settlement Class Period, within ten (10) calendar days of entry of the Preliminary Approval Order.  The reasonable costs and expenses incurred in acquiring these records shall be paid from the Settlement Fund.  It shall be solely Lead Counsel's responsibility to disseminate the Notice and Summary Notice to the Settlement Class in accordance with this Stipulation and as ordered by the Court.  Settlement Class

Members shall have no recourse as to the Released Defendant Parties with respect to any claims they may have that arise from any failure of the notice process.

**4.    Releases**

4.1    Upon the Effective Date, as defined in ¶1.4 hereof, Lead Plaintiff shall, and each and every Releasing Plaintiff Party shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, discharged, and dismissed each and every one of the Released Claims against each and every one of the Released Defendant Parties and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any and all of the Released Claims against any and all of the Released Defendant Parties, whether or not such Releasing Plaintiff Party executes and delivers the Proof of Claim and Release or shares in the Net Settlement Fund.  Claims to enforce the terms of this Stipulation are not released.

4.2    Any Proof of Claim and Release that is executed by Settlement Class Members shall release all Released Claims against the Released Defendant Parties and shall be substantially in the form contained in Exhibit A-2 attached hereto.

4.3    Upon the Effective Date, the Releasing Plaintiff Parties will be forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting the Released Claims against any of the Released Defendant Parties.

4.4    Upon the Effective Date, each of the Released Defendant Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Defendants' Claims against the Releasing Plaintiff Parties.  Claims to enforce the terms of this Stipulation are not released.

- 19 -

5.    **Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund**

5.1    The Claims Administrator, subject to such supervision and direction of Lead Counsel and the Court as may be necessary or as circumstances may require, shall administer and calculate the Claims submitted by Settlement Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.  Other than FTSI's obligation to facilitate Lead Plaintiff's acquisition of its securities holders' records as provided in ¶3.2 above, the Released Defendant Parties and Settling Defendants' Counsel shall have no responsibility for or interest in whatsoever with respect to the administration of the Settlement or the actions or decisions of the Claims Administrator, and shall have no liability whatsoever to the Releasing Plaintiff Parties, including Lead Plaintiff, any other Settlement Class Members, or Lead Counsel, in connection with such administration, including, but not limited to: (i) any act, omission, or determination by Lead Counsel, the Escrow Agent, and/or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management or investment of the Settlement Fund or the Net Settlement Fund, or the distribution of the Net Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation, or payment of any Claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in value of, the Settlement Fund; or (vi) the payment or withholding of any taxes, expenses, and/or costs incurred with the taxation of the Settlement Fund or the filing of any federal, state, or local returns.

5.2    The Settlement Fund shall be applied as follows:

(a)    to pay all Notice and Administration Expenses;

(b)    to pay the Taxes and Tax Expenses;

(c)     to pay attorneys' fees and expenses of Lead Plaintiff's Counsel and award to Lead Plaintiff pursuant to the PSLRA (the "Fee and Expense Award"), if and to the extent allowed by the Court; and

(d)     after the Effective Date, to distribute the Net Settlement Fund to Authorized Claimants as provided by this Stipulation, the Plan of Allocation, or the orders of the Court.

5.3     After the Effective Date, and in accordance with the terms of this Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following provisions of this Stipulation.

5.4     Within ninety (90) days after the mailing of the Notice or such other time as may be set by the Court, each Settlement Class Member shall be required to submit to the Claims Administrator a completed Proof of Claim and Release, substantially in the form of Exhibit A-2 attached hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and Release.

5.5     Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit a valid Proof of Claim and Release within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to this Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment, and will be barred from bringing any action against the Released Defendant Parties concerning the Released Claims.  Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not an obligation) to accept late-submitted Claims for processing by the Claims Administrator so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby.  No Person shall have any claim against Lead Plaintiff, her counsel, the

Claims Administrator or any Settlement Class Member by reason of the exercise or non-exercise of such discretion.

5.6     Each Proof of Claim and Release shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine, in accordance with this Stipulation and the approved Plan of Allocation, the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to ¶5.8 below.

5.7     Proof of Claim and Release forms that do not meet the submission requirements may be rejected.  Prior to rejecting a Proof of Claim and Release in whole or in part, the Claims Administrator shall communicate with the claimant in writing to give the claimant the chance to remedy any curable deficiencies in the Proof of Claim and Release submitted.  The Claims Administrator, under the supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all claimants whose Claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose Claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of ¶5.8 below.

5.8     If any claimant whose timely Claim has been rejected in whole or in part for curable deficiency desires to contest such rejection, the claimant must, within twenty (20) calendar days after the date of mailing of the notice required in ¶5.7 above, or a lesser period of time if the Claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the claimant's request for review to the Court.

5.9     Each claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's Claim,

including, but not limited to, all releases provided for herein and in the Judgment, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the claimant's status as a Settlement Class Member and the validity and amount of the claimant's Claim.  In connection with processing the Proofs of Claim and Release, no discovery shall be allowed on the merits of the Litigation or the Settlement.  All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court, but shall not in any event delay or affect the finality of the Judgment.  All Settlement Class Members, other claimants, and parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

5.10     Following the Effective Date, the Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with the Plan of Allocation set forth in the Notice and approved by the Court.  No distributions will be made to Authorized Claimants who would otherwise receive a distribution of less than $10.00.  If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the date of the distribution of the Net Settlement Fund, Lead Counsel shall, if feasible, reallocate such balance among Authorized Claimants who negotiated the checks sent in the initial distribution and who would receive a minimum of $10.00.  These redistributions shall be repeated until the balance remaining in the Net Settlement Fund is *de minimis*.  Any *de minimis* balance that still remains in the Net Settlement Fund after such reallocation(s) and payments, which is not feasible or economical to reallocate, shall be donated to any appropriate non-sectarian, non-profit charitable organization(s) serving the public interest selected by Lead Counsel.

5.11    The Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of Claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.  No Person shall have any claim of any kind against the Released Defendant Parties with respect to the matters set forth in ¶¶5.1-5.13 hereof; and the Releasing Plaintiff Parties release the Released Defendant Parties from any and all liability and claims arising from or with respect to the administration, investment, or distribution of the Settlement Fund.

5.12    No Person shall have any claim against the Released Defendant Parties, Lead Plaintiff, Lead Plaintiff's Counsel or the Claims Administrator, or any other Person designated by Lead Counsel based on determinations or distributions made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

5.13    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's Claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect the finality of the Court's Judgment approving this Stipulation and the Settlement set forth herein, or any other orders entered pursuant to the Stipulation.

## 6.    Lead Plaintiff's Counsel's Attorneys' Fees and Expenses

6.1    Lead Counsel may submit an application or applications (the "Fee and Expense Application") from the Settlement Fund for:  (a) an award of attorneys' fees; plus (b) expenses or

charges in connection with prosecuting the Litigation; plus (c) any interest earned on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court.  An application for fees and expenses may include a request for an award to Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 in connection with her representation of the Settlement Class.  Lead Counsel reserves the right to make additional applications for fees and expenses incurred.

6.2     The amount of attorneys' fees and expenses awarded by the Court is within the sole discretion of the Court.  Any fees and expenses, as awarded by the Court, shall be paid to Lead Counsel from the Settlement Fund, as ordered, immediately upon entry of Judgment and an order awarding such fees and expenses, notwithstanding the existence of any timely filed objections to the awarded fees and expenses, or potential for appeal therefrom.  Lead Counsel may thereafter allocate the attorneys' fees among Lead Plaintiff's Counsel in a manner in which it in good faith believes reflects the contributions of such counsel to the initiation, prosecution, and resolution of the Litigation.

6.3     In the event that the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified, or this Stipulation is canceled or terminated for any other reason, and such reversal, modification, cancellation or termination becomes Final and not subject to review, and in the event that the Fee and Expense Award has been paid to any extent, then Lead Counsel, including its partners and/or shareholders, and such other Lead Plaintiff's Counsel, including their law firms, partners, and/or shareholders, who have received any portion of the Fee and Expense Award shall, within ten (10) business days from receiving notice from Settling Defendants' Counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund all such fees and expenses previously paid to them from the Settlement Fund plus the interest earned thereon in an amount consistent with such reversal, modification, cancellation or

- 25 -

termination.  Any refunds required pursuant to this ¶6.3 shall be the several obligation of Lead Plaintiff's Counsel, including their law firms, partners, and/or shareholders, that received fees or expenses to make appropriate refunds or repayments to the Settlement Fund.  Each such Lead Plaintiff's Counsel receiving fees and expenses, as a condition of receiving such fees and expenses, on behalf of itself and each partner and/or shareholder of it, agrees that such Person and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.

6.4     The procedure for and the allowance or disallowance by the Court of any applications by any Lead Plaintiff's Counsel for attorneys' fees and expenses to be paid out of the Settlement Fund is not part of the Settlement set forth in this Stipulation, and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and shall have no effect on the terms of the Stipulation or on the validity or enforceability of this Settlement.  The approval of the Settlement, and it becoming Final, shall not be contingent on the award of attorneys' fees and expenses, any award to Lead Plaintiff, Lead Counsel, or Lead Plaintiff's Counsel, nor any appeals to such awards.  Any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the Judgment approving this Stipulation and the Settlement of the Litigation set forth therein.

6.5     Any fees and/or expenses awarded by the Court shall be paid solely from the Settlement Fund.  With the sole exception of Settling Defendants' obligation to cause the Settlement Amount to be paid into the Escrow Account as provided for in ¶2.2, the Released Defendant Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment of

- 26 -

attorneys' fees and/or expenses (including Taxes) to Lead Plaintiff's Counsel, or any other counsel or Person who receives payment from the Net Settlement Fund.

6.6     If so ordered in the Preliminary Approval Order, Lead Plaintiff's Counsel shall be entitled to provisional payment of 75% of their litigation expenses, subject to Lead Plaintiff's Counsel's several obligation to make appropriate refunds or repayments to the Escrow Account plus interest if, and when, as a result of any final order, the final expense award is lower than the amount provisionally paid or the Settlement or Stipulation is terminated or cancelled by a final judgment or order not subject to further review.

**7.     Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

7.1     The Effective Date of the Settlement shall be conditioned on the occurrence of all of the following events:

(a)     the Court has entered the Preliminary Approval Order, as required by ¶3.1 hereof;

(b)     the Bankruptcy Court has granted any further approvals and entered any furthers orders required in connection with the Chapter 11 Cases or with the Chesapeake Chapter 11 Cases;

(c)     the effective date of the Chapter 11 Cases shall have occurred;

(d)     the Settlement Amount has been deposited into the Escrow Account;

(e)     the Settling Defendants have not exercised their option to terminate the Stipulation pursuant to ¶7.3 hereof;

(f)     the Court has entered the Judgment, or a judgment substantially in the form of Exhibit B attached hereto, following notice to the Settlement Class and the Settlement Hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; and

(g)     the Judgment has become Final, as defined in ¶1.6 hereof.

- 27 -

7.2     Upon the Effective Date, any and all remaining interest or right of the Settling Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.  If the conditions specified in ¶7.1 hereof are not met, then the Settlement shall be canceled and terminated subject to ¶¶7.5, 7.6 and 7.7 hereof unless Lead Counsel and Settling Defendants' Counsel mutually agree in writing to proceed with the Settlement.

7.3     The Settling Defendants shall have the right to terminate the Settlement and render it null and void in the event that Settlement Class Members who purchased or otherwise acquired more than a certain percentage of FTSI publicly traded common stock subject to this Settlement exclude themselves from the Settlement Class, as set forth in a separate agreement (the "Supplemental Agreement") executed between Lead Plaintiff and Settling Defendants, by and through their counsel. The Settling Parties agree to maintain the confidentiality of the Supplemental Agreement, which is being executed concurrently herewith.  The Supplemental Agreement shall not be filed with the Court unless and until: (i) a dispute among the Settling Parties concerning the interpretation or application of the Supplemental Agreement arises; or (ii) the Court requires the Settling Parties to file the Supplemental Agreement or disclose its terms.  If the Supplemental Agreement is filed with the Court, the Settling Parties will seek to have the Supplemental Agreement submitted to the Court *in camera* or filed under seal, but such disclosure shall be carried out to the fullest extent possible in accordance with the practices of the Court so as to preserve the confidentiality of the Supplemental Agreement, particularly the threshold aggregate number of shares.

7.4     Each of Lead Plaintiff and Settling Defendants shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other parties hereto within thirty (30) calendar days of:  (a) the Court's final non-appealable refusal to enter the Preliminary Approval Order in any material respect; (b) the Court's final non-appealable refusal to approve this Stipulation or any material part of it; (c) the Bankruptcy

- 28 -

Court's final non-appealable refusal to enter any order in the Chapter 11 Cases or in the Chesapeake Chapter 11 Cases required to permit any material aspect of the Settlement to proceed; (d) the Court's final non-appealable refusal to enter the Judgment in any material respect; or (e) the date upon which the Judgment is modified or reversed in any material respect by the Court, the U.S. Court of Appeals for the Fifth Circuit, or the Supreme Court of the United States. For avoidance of doubt, no order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, expenses, and interest awarded by the Court to Lead Counsel or expenses to Lead Plaintiff shall operate to terminate or cancel this Stipulation or constitute grounds for cancellation or termination of the Stipulation.

7.5     Unless otherwise ordered by the Court, in the event this Stipulation is not approved or this Stipulation or the Settlement is terminated, or canceled, or the Effective Date otherwise fails to occur for any reason, including, without limitation, in the event the Judgment is reversed or vacated or materially altered following any appeal taken therefrom, or is successfully collaterally attacked, within ten (10) business days after written notification of such event is sent by Settling Defendants' Counsel or Lead Counsel to the Escrow Agent, the Settlement Fund, less Taxes, Tax Expenses and Notice and Administration Expenses which have either been disbursed pursuant to ¶¶2.10 and/or 2.12 hereof, or are chargeable to the Settlement Fund pursuant to ¶¶2.10 and/or 2.12 hereof, shall be refunded by the Escrow Agent to the Persons who contributed to the Settlement Fund in proportion to their respective contribution. Such refunds shall be made pursuant to written instructions from Settling Defendants' Counsel. The Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Amount and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund to the same Persons in the same manner as the Settlement Fund described in this ¶7.5. Such payments shall be pursuant to written instructions from Settling Defendants' Counsel.

4853-0783-9951.v5

7.6     In the event that this Stipulation is not approved or this Stipulation or the Settlement is terminated, canceled, or the Effective Date otherwise fails to occur for any reason, the Settling Parties shall be restored to their respective positions in the Litigation as of October 16, 2020.  In such event, the terms and provisions of the Stipulation, with the exception of ¶¶1.1-1.33, 2.6-2.14, 6.3-6.4, 7.3-7.7, 8.1, 9.4-9.8, 9.10-9.15, and 9.17-9.20 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.  No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or any Fee and Expense Award shall operate to terminate or cancel this Stipulation or constitute grounds for cancellation or termination of this Stipulation.

7.7     If the Effective Date does not occur, or if this Stipulation is terminated pursuant to its terms, neither Lead Plaintiff nor any of her counsel shall have any obligation to repay any amounts disbursed pursuant to ¶¶2.10 or 2.12.  In addition, any amounts already incurred pursuant to ¶¶2.10 or 2.12 hereof at the time of such termination or cancellation but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of this Stipulation prior to the balance being refunded in accordance with ¶¶2.14 and 7.6 hereof.

**8.     No Admission of Wrongdoing**

8.1     Neither the Settlement, this Stipulation (whether or not consummated), including the Exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of this Stipulation and the Settlement, nor any proceedings taken pursuant to or in connection with this Stipulation, and/or approval of the Settlement (including any arguments proffered in connection therewith):

4853-0783-9951.v5

(a) shall be offered or received against any Settling Defendant as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Settling Defendant of the truth of any allegations by Lead Plaintiff or any Member of the Settlement Class or the validity of any claim that has been or could have been asserted in the Litigation, or the deficiency of any defense that has been or could have been asserted in the Litigation or in any other litigation, including, but not limited to, litigation of the Released Claims, or of any liability, negligence, fault, or wrongdoing of any kind of any of the Settling Defendants or in any way referred to for any other reason as against any of the Settling Defendants, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b) shall be offered or received against any Settling Defendant as evidence of a presumption, concession, or admission of any fault, misrepresentations, or omission with respect to any statement or written document approved or made by any Settling Defendant, or against Lead Plaintiff or any Member of the Settlement Class as evidence of any infirmity in the claims of Lead Plaintiff and the Settlement Class;

(c) shall be offered or received against any Settling Defendant as evidence of a presumption, concession, or admission of any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against any of the parties to this Stipulation, in any other civil, criminal, or administrative action or proceeding; provided, however, that if this Stipulation is approved by the Court, Settling Defendants and their Related Parties may refer to it to effectuate the release granted them hereunder; or

(d) shall be construed against Settling Defendants, Lead Plaintiff, or the Settlement Class as evidence of a presumption, concession or admission that the consideration to be

given hereunder represents the amount which could be or would have been recovered after trial or in any proceeding other than this Settlement.

### 9.     Miscellaneous Provisions

9.1     The Settling Parties:  (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation.

9.2     The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The Settlement compromises all claims that were or are contested and shall not be deemed an admission by any of the Settling Parties as to the merits of any claim or defense.  The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.  While retaining their right to deny liability, the Settling Defendants and the Released Defendant Parties, including the Chesapeake Defendants, agree that, based upon the publicly available information at the time, the Litigation was filed in good faith.  The Settling Parties and the Released Defendant Parties, including the Chesapeake Defendants, agree that throughout the course of the Litigation, all parties and their counsel complied with the provisions of Federal Rule of Civil Procedure 11, Federal Rule of Bankruptcy Procedure 9011, and Texas Rule of Civil Procedure 13, and the proposed final judgment will contain a statement to reflect this compliance.  The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum regarding the Litigation, including that the Litigation was brought or defended in bad faith or without a reasonable basis.

4853-0783-9951.v5

9.3     Settling Defendants and/or the Released Defendant Parties may file this Stipulation and/or the Judgment from this action in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, statute of limitations, statute of repose, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate any liability protection under any applicable insurance policy.  The Settling Parties may file this Stipulation and/or the Judgment in any action that may be brought to enforce the terms of this Stipulation and/or Judgment.  All Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

9.4     All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

9.5     All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

9.6     This Stipulation, along with its Exhibits and the Supplemental Agreement, may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

9.7     This Stipulation and the Exhibits attached hereto together with the Supplemental Agreement constitute the entire agreement among the Settling Parties hereto as to the subject matter hereof and supersede any prior or contemporaneous written or oral agreements or understandings between the Settling Parties.  No representations, warranties, or inducements have been made to any party concerning this Stipulation, its Exhibits, or the Supplemental Agreement, other than the representations, warranties, and covenants contained and memorialized in such documents.

9.8     Except as otherwise provided herein, each party shall bear his, her, or its own fees and costs.

- 33 -

9.9     Lead Counsel, on behalf of the Settlement Class, is expressly authorized by Lead Plaintiff to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to this Stipulation to effectuate its terms and also is expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Settlement Class which it deems appropriate.

9.10     Each counsel or other Person executing this Stipulation, its Exhibits, the Supplemental Agreement, or any related Settlement document, on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

9.11     This Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.  Signatures sent by facsimile or PDF via e-mail shall be deemed originals.

9.12     All notices, requests, demands, claims, and other communications hereunder shall be in writing and shall be deemed duly given: (i) when delivered personally to the recipient, or when delivered via email with confirmation of receipt; (ii) one (1) business day after being sent to the recipient by reputable overnight courier service (charges prepaid); or (iii) seven (7) business days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, and addressed to the intended recipient as set forth below:

*If to Lead Plaintiff or to Lead Counsel*:

ROBBINS GELLER RUDMAN
  & DOWD LLP
THEODORE J. PINTAR
655 West Broadway, Suite 1900
San Diego, CA  92101
tedp@rgrdlaw.com

- 34 -

***If to Settling Defendants or to Settling Defendants' Counsel***:

BAKER BOTTS L.L.P.
JESSICA B. PULLIAM
JOHN B. LAWRENCE
2001 Ross Avenue, Suite 900
Dallas, TX  75201-2980
jessica.pulliam@bakerbotts.com
john.lawrence@bakerbotts.com

In each event, a copy of the notice, request, demand, claim, or other communication shall also be made via email.

9.13    This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

9.14    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation, and all Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation and matters related to the Settlement.

9.15    The waiver by one of the Settling Parties of any breach of this Stipulation by any other party shall not be deemed a waiver by any other of the Settling Parties or a waiver of any other prior or subsequent breach of this Stipulation.

9.16    Pending approval of the Court of this Stipulation and its Exhibits, all proceedings in this Litigation shall be stayed and all Members of the Settlement Class shall be barred and enjoined from prosecuting any of the Released Claims against any of the Released Defendant Parties.

9.17    This Stipulation, its Exhibits and the Supplemental Agreement shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Texas, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of Texas without giving effect to its choice-of-law principles, except to the extent that federal law requires that federal law govern.

4853-0783-9951.v5

9.18    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

9.19    This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and the Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

9.20    Nothing in the Stipulation, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense privilege, or work product protection.

9.21    Unless otherwise provided, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation without further order of the Court.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated November 19, 2020.

<div style="margin-left:40%">

ROBBINS GELLER RUDMAN
  & DOWD LLP
SCOTT H. SAHAM (*adm. pro hac vice*)
BRIAN O. O'MARA (*adm. pro hac vice*)
KEVIN S. SCIARANI (*adm. pro hac vice*)

_____
            SCOTT H. SAHAM

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
scotts@rgrdlaw.com
bomara@rgrdlaw.com
ksciarani@rgrdlaw.com

</div>

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

JOHNSON FISTEL, LLP
MICHAEL I. FISTEL, JR.
WILLIAM W. STONE
40 Powder Springs Street
Marietta, GA 30064
Telephone: 470/632-6000
770/200-3101 (fax)
michaelf@johnsonfistel.com
williams@johnsonfistel.com

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 1450
Dallas, TX 75219
Telephone: 214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Attorneys for Lead Plaintiff


BAKER BOTTS L.L.P.
JESSICA B. PULLIAM (Texas Bar. No. 24037309)
JOHN B. LAWRENCE (Texas Bar. No. 24055825)
MONICA H. SMITH (Texas Bar. No. 24087768)
JORDAN A. KAZLOW (Texas Bar. No. 24101994)

_Jessica B. Pulliam_
JESSICA B. PULLIAM

2001 Ross Avenue, Suite 900
Dallas, TX 75201-2980
Telephone: 214/953-6500
214/953-6503 (fax)

Attorneys for Defendants FTS International, Inc.,
Maju Investments (Mauritius) Pte Ltd, Michael J.
Doss, Lance Turner, Goh Yong Siang, Boon Sim,
Ong Tiong Sin, and Carol J. Johnson

- 37 -

TILLOTSON LAW
JEFFREY M. TILLOTSON (Texas Bar No. 20039200)

_____
BLAKE T. DENTON

1807 Ross Avenue, Suite 325
Dallas, TX  75201
Telephone:  214/382-3041
214/292-6564 (fax)

LATHAM & WATKINS LLP
JEFF G. HAMMEL (*adm. pro hac vice*)
BLAKE T. DENTON (*adm. pro hac vice*)
885 Third Avenue
New York, NY  10022
Telephone:  212/906-1200
212/751-486 (fax)

Attorneys for Credit Suisse Securities (USA) LLC
and Morgan Stanley & Co. LLC


AKIN GUMP STRAUSS HAUER & FELD LLP
M. SCOTT BARNARD (Texas Bar No. 24001690)
MICHELLE A. REED (Texas Bar No. 24041758)
JESSICA J. MANNON (Texas Bar No. 24106247)


_____
M. SCOTT BARNARD

2300 N. Field Street, Suite 1800
Dallas, TX  75201
Telephone:  214/969-2800
214/969-4343 (fax)

Attorneys for Defendants Domenic J. Dell'Osso Jr.
and Bryan J. Lemmerman


ORRICK, HERRINGTON & SUTCLIFFE, LLP
ALEXANDER K. TALARIDES
ROBERT P. VARIAN


_____
ALEXANDER K. TALARIDES

- 38 -

TILLOTSON LAW
JEFFREY M. TILLOTSON (Texas Bar No. 20039200)

_____

JEFFREY M. TILLOTSON

1807 Ross Avenue, Suite 325
Dallas, TX  75201
Telephone:  214/382-3041
214/292-6564 (fax)

LATHAM & WATKINS LLP
JEFF G. HAMMEL (*adm. pro hac vice*)
BLAKE T. DENTON (*adm. pro hac vice*)
885 Third Avenue
New York, NY  10022
Telephone:  212/906-1200
212/751-486 (fax)

Attorneys for Credit Suisse Securities (USA) LLC
and Morgan Stanley & Co. LLC

AKIN GUMP STRAUSS HAUER & FELD LLP
M. SCOTT BARNARD (Texas Bar No. 24001690)
MICHELLE A. REED (Texas Bar No. 24041758)
JESSICA J. MANNON (Texas Bar No. 24106247)

_____
M. SCOTT BARNARD
Michelle A. Reed

2300 N. Field Street, Suite 1800
Dallas, TX  75201
Telephone:  214/969-2800
214/969-4343 (fax)

Attorneys for Defendants Domenic J. Dell'Osso Jr.
and Bryan J. Lemmerman

ORRICK, HERRINGTON & SUTCLIFFE, LLP
ALEXANDER K. TALARIDES
ROBERT P. VARIAN

_____

ALEXANDER K. TALARIDES

- 38 -

4853-0783-9951.v5

TILLOTSON LAW
JEFFREY M. TILLOTSON (Texas Bar No. 20039200)

---

JEFFREY M. TILLOTSON

1807 Ross Avenue, Suite 325
Dallas, TX  75201
Telephone:  214/382-3041
214/292-6564 (fax)

LATHAM & WATKINS LLP
JEFF G. HAMMEL (*adm. pro hac vice*)
BLAKE T. DENTON (*adm. pro hac vice*)
885 Third Avenue
New York, NY  10022
Telephone:  212/906-1200
212/751-486 (fax)

Attorneys for Credit Suisse Securities (USA) LLC
and Morgan Stanley & Co. LLC

AKIN GUMP STRAUSS HAUER & FELD LLP
M. SCOTT BARNARD (Texas Bar No. 24001690)
MICHELLE A. REED (Texas Bar No. 24041758)
JESSICA J. MANNON (Texas Bar No. 24106247)

---

M. SCOTT BARNARD

2300 N. Field Street, Suite 1800
Dallas, TX  75201
Telephone:  214/969-2800
214/969-4343 (fax)

Attorneys for Defendants Domenic J. Dell'Osso Jr.
and Bryan J. Lemmerman

ORRICK, HERRINGTON & SUTCLIFFE, LLP
ALEXANDER K. TALARIDES
ROBERT P. VARIAN

---

ALEXANDER K. TALARIDES

- 38 -

405 Howard Street
San Francisco, CA 94105
Telephone:  415/773-5700
415/773-5759 (fax)

LYNN PINKER COX & HURST, LLP
MICHAEL K HURST (Texas Bar No. 10316310)
ANDRÉS CORREA (Texas Bar No. 24076330)
JOHN R. CHRISTIAN (Texas Bar No. 24109727)
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone:  214/981-3800
212/981-3839 (fax)

Attorneys for Chesapeake Energy Corporation and
CHK Energy Holdings, Inc.

- 39 -

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on November 20, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the Electronic Mail Notice List.

s/ Joe Kendall
JOE KENDALL