UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| CAROL GLOCK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>FTS INTERNATIONAL, INC., et al.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:20-cv-03928<br><br><u>CLASS ACTION</u><br><br>Judge Lee H. Rosenthal |

**LEAD PLAINTIFF'S MOTION FOR (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT; (2) APPROVAL OF PLAN OF ALLOCATION; (3) AWARD OF ATTORNEYS' FEES AND EXPENSES; AND (4) AWARD TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §77z-1(a)(4) AND MEMORANDUM IN SUPPORT THEREOF**

## TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ....................1

II. PROCEDURAL AND FACTUAL BACKGROUND ....................5

III. THE NOTICE SATISFIES RULE 23 AND DUE PROCESS ....................5

IV. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ....................6

A. In the Fifth Circuit, Settlements Are Generally Favored ....................6

B. The Settlement Is Entitled to a Presumption of Fairness ....................7

C. The Settlement Meets All Requirements for Approval ....................8

1. Lead Plaintiff and Lead Counsel Adequately Represented the Settlement Class ....................9

2. The Settlement Was Negotiated at Arm's Length ....................9

3. The Settlement Is Fair and Adequate Given the Complexity, Costs, and Delay of Trial and Appeal ....................10

4. The Stage of the Proceedings Warrants Final Approval ....................11

5. The Risk of Further Litigation Supports Final Approval ....................11

6. The Settlement Is Within the Range of Reasonableness ....................12

7. Lead Counsel, Lead Plaintiff and Settlement Class Members Support Final Approval ....................12

8. The Remaining Rule 23(e)(2) Factors Are Also Met ....................13

a. The Proposed Method for Distribution Is Effective ....................13

b. Attorneys' Fees ....................13

c. There Are No Other Agreements Besides Opt-Outs ....................14

d. Settlement Class Members Are Treated Equitably ....................14

V. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ....................15

VI. AWARD OF ATTORNEYS' FEES ....................15

**Page**


A. Lead Counsel Is Entitled to an Award of Attorneys' Fees from the $9.875 Million Common Fund Created in the Settlement ....15

B. The Court Should Award a Percentage of the Common Fund ....16

C. The Requested Percentage Is Fair and Reasonable and Is Consistent with Fee Awards in Comparable Cases from This Circuit ....17

D. The *Johnson* Factors Confirm that the Requested Fee Is Reasonable ....18

1. Time and Labor Required ....19

2. Novelty and Difficulty of the Issues ....19

3. Skill Required: The Experience, Reputation, and Ability of the Attorneys ....20

4. Preclusion of Other Employment ....21

5. Whether the Fee Is Fixed or Contingent ....21

6. The Amount Involved and Results Obtained ....22

7. The Undesirability of the Case ....22

8. The Requested Fee Is Supported by Awards in Similar Cases. ....23

E. Settlement Class Member Reaction ....23

VII. LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE SETTLEMENT ....24

VIII. LEAD PLAINTIFF'S AWARD UNDER 15 U.S.C. §77z-1(a)(4) ....24

IX. CONCLUSION ....25

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ....20

*Ayers v. Thompson*,
358 F.3d 356 (5th Cir. 2004) ....9

*Barton v. Drummond Co.*,
636 F.2d 978 (5th Cir. 1981) ....15

*Beecher v. Able*,
575 F.2d 1010 (2d Cir. 1978)....15

*Billetteri v. Securities America, Inc.*,
No. 3:09-cv-01568-F, 2011 WL 3586217
(N.D. Tex. Aug. 4, 2011) ....12

*Blum v. Stenson*,
465 U.S. 886 (1984)....17

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)....15

*Brantley v. Surles*,
804 F.2d 321 (5th Cir. 1986) ....19

*Cent. R.R. & Banking Co. v. Pettus*,
113 U.S. 116 (1885)....16

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ....6

*DeHoyos v. Allstate Corp.*,
240 F.R.D. 269 (W.D. Tex. 2007) ....12

*DiGiacomo v. Plains All American Pipeline*,
No. Civ.A.H-99-4137, 2001 WL 34633373
(S.D. Tex. Dec. 19, 2001) ....16, 18, 24

*Dolgow v. Anderson*,
43 F.R.D. 472 (E.D.N.Y. 1968) ....16

*Erica P. John Fund, Inc. v. Halliburton Co.*,
No. 3:02-CV-1152-M, 2018 WL 1942227
(N.D. Tex. Apr. 25, 2018)....8, 14, 23

**Page**

*Faircloth v. Certified Fin. Inc.*,
No. Civ.A. 99-3097, 2001 WL 527489
(E.D. La. May 16, 2001) ....................24

*Garza v. Sporting Goods Props., Inc.*,
No. CIV. A. SA-93-CA-108, 1996 WL 56247
(W.D. Tex. Feb. 6, 1996) ....................18, 22

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ....................22

*Harman v. Lyphomed, Inc.*,
945 F.2d 969 (7th Cir. 1991) ....................23

*In re Aetna Inc. Sec. Litig.*,
MDL No. 1219, 2001 U.S. Dist. LEXIS 68
(E.D. Pa. Jan. 4, 2001) ....................21

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
No. 07-61542-CIV, 2011 WL 1585605
(S.D. Fla. Apr. 25, 2011) ....................22

*In re Chicken Antitrust Litig. Am. Poultry*,
669 F.2d 228 (5th Cir. 1982) ....................15

*In re Combustion, Inc.*,
968 F. Supp. 1116 (W.D. La. 1997) ....................18

*In re Deepwater Horizon*,
739 F.3d 790 (5th Cir. 2014) ....................6

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
No. Civ. A. H-01-3624, 2004 WL 1900294
(S.D. Tex. Aug. 5, 2004) ....................24

*In re Heartland Payment Sys. Customer Data Sec. Breach Litig.*,
851 F. Supp. 2d 1040 (S.D. Tex. 2012) ....................5, 11, 24, 25

*In re Lease Oil Antitrust Litig.*,
186 F.R.D. 403 (S.D. Tex. 1999) ....................17

*In re OCA, Inc. Sec. & Derivative Litig.*,
No. 05-2165, 2009 WL 512081
(E.D. La. Mar. 2, 2009) ....................11, 20, 21

**Page**

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ....7

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*, MDL No. 888, 1994 WL 202394 (E.D. La. May 18, 1994) ....18

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) ....23

*In re Terra-Drill P'ships Sec. Litig.*, 733 F. Supp. 1127 (S.D. Tex. 1990) ....22

*In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512 (S.D.N.Y. 2011) ....22

*Internal Imp. Fund Trs. v. Greenough*, 105 U.S. 527 (1881) ....16

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) .... *passim*

*Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632 (N.D. Tex. 2010) ....10, 21

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ....23

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970) ....15

*Missouri v. Jenkins*, 491 U.S. 274 (1989) ....17

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) ....6

*Parmalee v. Santander Consumer USA Holdings Inc.*, No. 3:16-cv-00783-K, 2019 WL 2352837 (N.D. Tex. June 3, 2019) ....17

*Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157 (5th Cir. 1978) ....7

**Page**

*Reed v. Gen. Motors Corp.*,
703 F.2d 170 (5th Cir. 1983) ........................................................................ *passim*

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ........................................................................22

*Schwartz v. TXU Corp.*,
No. 3:02-CV-2243-K, 2005 WL 3148350
(N.D. Tex. Nov. 8, 2005) ........................................................................ *passim*

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
91 F. Supp. 2d 942 (E.D. Tex. 2000)........................................................................16

*Singh v. 21Vianet Grp., Inc.*,
No. 2:14-cv-00894-JRG-RSP, 2018 WL 6427721
(E.D. Tex. Dec. 7, 2018)........................................................................17

*Slipchenko v. Brunel Energy, Inc.*,
2015 WL 338358 (S.D. Tex. Jan. 23, 2015)........................................................................25

*Smith v. Tower Loan of Mississippi, Inc*.,
216 F.R.D. 338 (S.D. Miss. 2003),
*aff'd on other grounds*, 91 Fed. Appx. 952 (5th Cir. 2004)........................................................................25

*Sprague v. Ticonic Nat'l Bank*,
307 U.S. 161 (1939)........................................................................15, 16

*Taft v. Ackermans*,
No. 02 CIV. 7951 (PKL), 2007 WL 414493
(S.D.N.Y. Jan. 31, 2007)........................................................................15

*Tellabs, Inc. v. Major Issues & Rights, Ltd.*,
551 U.S. 308 (2007)........................................................................16

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012) ........................................................................16, 17

*United States v. Tex. Educ. Agency*,
679 F.2d 1104 (5th Cir. 1982) ........................................................................7

**Page**

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§77k(e) ....... 4
§77z-1(a)(4) ....... *passim*
§78u-4(a)(6) ....... 17

Federal Rules of Civil Procedure
Rule 23(c)(2) ....... 5-6
Rule 23(c)(2)(B) ....... 5
Rule 23(e) ....... 1, 5, 8
Rule 23(e)(1) ....... 5
Rule 23(e)(1)(B) ....... 5
Rule 23(e)(2) ....... 8, 13
Rule 23(e)(2)(A) ....... 9
Rule 23(e)(2)(B) ....... 9
Rule 23(e)(2)(C)(i) ....... 10
Rule 23(e)(2)(C)(ii) ....... 13
Rule 23(e)(2)(C)(iii) ....... 13
Rule 23(e)(2)(C)(iv) ....... 14
Rule 23(e)(3) ....... 8

**SECONDARY AUTHORITIES**

*Manual for Complex Litigation* (4th ed. 2004)
§21.312 ....... 5

Lead plaintiff Carol Glock ("Lead Plaintiff"), on behalf of herself and the Settlement Class, respectfully moves this Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for an order: (1) approving the proposed Settlement of this action ("Litigation") on the terms set forth in the Stipulation of Settlement, dated November 19, 2020 ("Stipulation" or "Settlement"); (2) approving the proposed Plan of Allocation; (3) awarding attorneys' fees of 33% of the Settlement Amount and litigation expenses of $205,170.61, plus interest earned on both amounts; and (4) awarding Lead Plaintiff $2,500, pursuant to 15 U.S.C. §77z-1(a)(4).[1]

## I. PRELIMINARY STATEMENT

Under the terms of the proposed Settlement, as set forth in the Stipulation, Defendants have paid $9,875,000 in cash into an interest-bearing escrow account maintained on behalf of the Settlement Class, in exchange for the dismissal with prejudice of all claims brought against them. This Settlement represents a very good recovery for the Settlement Class, particularly in light of the considerable risks, expense, and delay posed by continued litigation. As discussed below and in the accompanying declarations, the significant risks involved in taking this Litigation further and through trial (where the two corporate defendants have both filed for bankruptcy), when measured against the immediate benefit of the Settlement, strongly support approval of this Settlement.

This was hard fought litigation over nearly two years in the Texas state trial and appellate courts, as well as the federal bankruptcy courts. Defendants, represented by some of the largest law firms in the country, zealously utilized every procedural mechanism to thwart Lead Plaintiff's claims. Defendants filed comprehensive briefing seeking to dismiss this Litigation and, when the second of those motions failed, sought leave to immediately appeal the Texas State Trial Court's order, which that court denied. *See* Joint Declaration of Scott H. Saham and Brett M. Middleton in

---

1 Unless otherwise noted, all capitalized terms used herein are defined in the November 19, 2020 Stipulation of Settlement ("Stipulation"). ECF No. 9.

Support of Lead Plaintiff's Motion for: (1) Final Approval of Class Action Settlement; (2) Approval of Plan of Allocation; (3) Award of Attorneys' Fees and Expenses; and (4) Award to Lead Plaintiff Pursuant to 15 U.S.C. §77z-1(a)(4) ("Joint Decl." or "Joint Declaration"), ¶¶26-28, submitted herewith. Defendants then petitioned the Texas Court of Appeals to issue a writ of mandamus and were granted an emergency motion to stay the action pending adjudication of their writ. Once Lead Plaintiff successfully opposed the writ, defendants filed a subsequent petition to the Texas Supreme Court, which was pending at the time this case was removed to the bankruptcy court. Having argued to the Texas state and appellate courts that federal court was better equipped to address Lead Plaintiff's claims, Defendants seized the opportunity to seek removal of the Litigation to federal court following the filing of a petition for bankruptcy.

Now, the Settlement comes after the parties have had ample opportunity to test each others' respective claims and defenses through extensive motion practice, appellate review, significant fact discovery, including the production and review of over 250,000 pages of documents, and protracted arm's-length settlement negotiations with the assistance of an experienced mediator, David M. Murphy, Esq., of Phillips ADR. In addition to the aforementioned motion and appellate practice, at the time the parties agreed to the Settlement, the Settling Defendants' motion for judgment on the pleadings had been fully briefed and set for hearing in the Bankruptcy Court for the Southern District of Texas. As a result of extensive litigation efforts and settlement negotiations, Lead Plaintiff and Lead Counsel had a thorough understanding of the relative strengths and weaknesses of their claims and the propriety of settlement.[2]

While Lead Counsel believe that the Settlement Class' claims have significant merit based on the evidence adduced, from the outset, Defendants adamantly denied liability and have continued to

---

2 The efforts of Lead Counsel in obtaining this favorable result are set forth in greater detail in the accompanying Joint Declaration.

assert that they possessed absolute defenses to the Settlement Class' claims. During extensive settlement negotiations, including a full-day video conference mediation, Lead Counsel made it clear that while they were prepared to fairly assess the strengths and weaknesses of this case, they were prepared to (and, in fact, did) continue to litigate rather than settle for less than fair value.

The Settlement Class' reaction thus far also supports the Settlement and Plan of Allocation. On December 8, 2020, the Court entered its Order Preliminarily Approving Settlement and Providing for Notice (Case No. 4:20-cv-03928, ECF No. 15) ("Notice Order"), which set a hearing for April 12, 2021, to determine the fairness, reasonableness, and adequacy of the Settlement. In accordance with the Notice Order, as of February 12, 2021, over 15,500 Notices and Proofs of Claim and Release were mailed to potential Settlement Class Members and nominees. *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), ¶¶4-11. In addition, pursuant to the Notice Order, the Notice, Proof of Claim and Release, Stipulation and its Exhibits, and Notice Order were posted on the Settlement website (www.FTSISecuritiesSettlement.com) (*id.*, ¶14), and a Summary Notice was published in the national edition of *The Wall Street Journal* and transmitted over the *Business Wire* on December 29, 2020 (*id.*, ¶12). To date, not a single objection to the proposed Settlement has been made.

In light of their informed assessment of the claims and defenses asserted, and the substantial Settlement Amount, Lead Plaintiff and Lead Counsel (who are highly experienced in prosecuting securities class actions) have determined and believe that the Settlement is fair, reasonable, and adequate, and provides a very good result for the Settlement Class. Lead Plaintiff respectfully requests that the Court approve this Settlement.

Lead Plaintiff also requests that the Court approve the proposed Plan of Allocation, which was set forth in the Notice sent to Settlement Class Members. The Plan of Allocation governs how claims will be calculated and how Settlement proceeds will be distributed among Authorized

Claimants. The Plan of Allocation is based on the statutory measure of damages, 15 U.S.C. §77k(e), and was prepared with input from Lead Counsel's in-house economic consultant.

In addition, as compensation for their persistent and effective advocacy in the face of considerable opposition and risk, and with the support of Lead Plaintiff, Lead Counsel respectfully move the Court for an award of attorneys' fees in the amount of 33% of the Settlement Amount, litigation expenses in the amount of $205,170.61, and $2,500 for Lead Plaintiff in connection with her representation of the Settlement Class pursuant to 15 U.S.C. §77z-1(a)(4).

Lead Counsel's fee request is reasonable and consistent with the percentages typically awarded in securities class actions in this and other Circuits. As detailed in the accompanying declarations,[3] Lead Counsel have devoted substantial efforts and resources to litigating this case and achieving this Settlement. To date, counsel have spent 6,342 hours with a total lodestar of $4,016,507. Lead Counsel undertook the representation of the Settlement Class on a contingent fee basis, and no payment has been made for their two years of service or for the litigation expenses they advanced on behalf of the Settlement Class. No party, other than Lead Plaintiff, sought to bring these claims, and no other counsel sought to be appointed as lead counsel. Had Lead Plaintiff and Lead Counsel not taken the initiative and accepted the risk in bringing and pursuing this action, Settlement Class Members would not have recovered anything from Defendants.

For the reasons set forth herein and in the accompanying declarations, the requested attorneys' fees are fair and reasonable and should be awarded by the Court.

---

3 The following declarations are filed concurrently herewith: Declaration of Scott H. Saham Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Decl."), Declaration of Brett M. Middleton Filed on Behalf of Johnson Fistel, LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Johnson Fistel Decl."), and Declaration of Joe Kendall Filed on Behalf of Kendall Law Group, PLLC in Support of Application for Award of Attorneys' Fees and Expenses ("Kendall Decl.").

## II. PROCEDURAL AND FACTUAL BACKGROUND

To avoid repetition, the Court is respectfully referred to the accompanying Joint Declaration for a full discussion of: (1) the Litigation's factual and procedural history (Joint Decl., ¶¶13-57); (2) Lead Counsel's efforts in prosecuting the Litigation through state, appellate, and bankruptcy courts, in securing the Settlement on behalf of the Settlement Class (*e.g.*, *id.*, ¶¶13-66); (3) an evaluation of the strengths and weaknesses of the parties' respective claims and defenses and the negotiations leading to this Settlement (*id.*, ¶¶73-83); (4) the reasons why the Settlement and the Plan of Allocation are fair and reasonable and should be approved (*id.*, ¶¶4-10, 69-71, 73); and (5) why the Court should approve Lead Counsel's application for an award of attorneys' fees and expenses, and Lead Plaintiff's application for an award pursuant to 15 U.S.C. §77z-1(a)(4) (*id.*, ¶¶84-86).

## III. THE NOTICE SATISFIES RULE 23 AND DUE PROCESS

Rule 23(c)(2) requires notice of a proposed class action settlement be provided to the class through "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also* Fed. R. Civ. P. 23(e)(1). While "'[t]here are no rigid rules to determine whether a settlement notice satisfies constitutional or Rule 23(e) requirements . . . the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *In re Heartland Payment Sys. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1060 (S.D. Tex. 2012).[4] "Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.'" *Manual for Complex Litigation* §21.312, at 293 (4th ed. 2004). To satisfy due process, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and

[4] Internal citations are omitted and emphasis is added unless otherwise noted.

afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Here, in accordance with the Notice Order, starting on December 22, 2020, the Claims Administrator caused the Notice and Proof of Claim and Release to be mailed to potential Settlement Class Members and nominees. *See* Murray Decl., ¶¶ 5-10. As of February 12, 2021, over 15,500 copies of the Notice have been mailed to potential Settlement Class Members and nominees. *Id.*, ¶11. The Notice contains a description of the claims asserted, the Settlement, the Plan of Allocation, and Settlement Class Members' rights to participate in and object to the Settlement, Plan of Allocation, attorneys' fees and expenses, the award to Lead Plaintiff that Lead Counsel requests, or to exclude themselves from the Settlement Class. In addition, on December 29, 2020, the Summary Notice was published in the national edition of *The Wall Street Journal* and over the *Business Wire*. *Id.*, ¶12. Information regarding the Settlement, including downloadable copies of the Notice and Proof of Claim and Release, was posted on a website devoted to the Settlement: www.FTSISecuritiesSettlement.com. *Id.*, ¶14. The notice program provided all of the information required by the PSLRA and is adequate to meet the due process and Rules 23(c)(2) and (e) requirements for providing notice to the Settlement Class.

## IV. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A. In the Fifth Circuit, Settlements Are Generally Favored

The Fifth Circuit has long observed a general policy favoring the settlement of disputed claims, especially in class actions. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014) (noting the "'overriding public interest in favor of settlement' that we have recognized '[p]articularly in class action suits'").

**B. The Settlement Is Entitled to a Presumption of Fairness**

Courts have found a strong initial presumption of fairness attaches to a proposed settlement if the settlement is reached by experienced counsel after arm's-length negotiations. *See United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982); *see also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721 (2d Cir. 1997). To a large degree, in determining the fairness and reasonableness of a proposed settlement, courts must rely on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried."). Thus, if experienced counsel determine that a settlement is in the class' best interests, "the attorney's views must be accorded great weight." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978). Here, the settlement negotiations, including the full day mediation on April 29, 2020, with highly qualified mediator David M. Murphy, Esq. of Phillips ADR, took place as the parties briefed or otherwise addressed: (i) Defendants' multiple petitions for writ of mandamus to the Texas Court of Appeals; (ii) two defendants' separate bankruptcy petitions; (iii) Defendants' removal and transfer petitions; (iv) Defendants' motion for judgment on the pleadings; and (v) Lead Plaintiff's motions to remand or abstain. Joint Decl., ¶¶29-33, 44-53. Throughout the parties' attempts to resolve the Litigation, including during the mediation, Lead Counsel zealously advanced Lead Plaintiff's position and were fully prepared to (and, in fact, did) continue to prosecute the Litigation rather than settle for less than fair value. Indeed, Lead Plaintiff and Lead Counsel continued to litigate the case for several months following the mediation until the Settling Parties accepted Mr. Murphy's mediator's proposal. Given the arm's-length nature of the negotiations, counsel's

experience, the parties' ability to adequately test their respective claims and defenses, and the active involvement of an experienced mediator, there can be no question that the Settlement is procedurally fair and is not the product of fraud or collusion. *See Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-CV-1152-M, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018) (noting that "the settlement was not the result of improper dealings" where it was obtained through formal mediation). Joint Decl., ¶¶58-66. Accordingly, the Settlement is entitled to a presumption of fairness.

### C. The Settlement Meets All Requirements for Approval

Federal Rule of Civil Procedure 23(e) requires judicial approval for a settlement of claims brought as a class action. Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval."). Rule 23(e)(2), as recently amended, provide the following relevant factors:

> (2) (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In evaluating whether settlements are fair, reasonable, and adequate, courts in the Fifth Circuit also consider the following factors, certain of which overlap with Rule 23(e)(2): (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed;

(4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *Reed*, 703 F.2d at 172; *see also Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004). As demonstrated below, the Settlement should be approved as it satisfies each of the foregoing *Reed* factors.

#### 1. Lead Plaintiff and Lead Counsel Adequately Represented the Settlement Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Here, Lead Plaintiff and Lead Counsel spent almost two years vigorously litigating the Settlement Class' claims, including extensive motion practice, fact discovery and protracted arm's-length settlement negotiations with the assistance of an experienced mediator. Joint Decl., ¶¶13-66. Lead Plaintiff, like all other members of the Settlement Class, acquired shares of FTSI common stock traceable to the Company's February 2, 2018 IPO and was subject to the same alleged misstatements and omissions as all Settlement Class Members. Moreover, Lead Plaintiff's role as lead plaintiff in this Litigation was never challenged. And, throughout the Litigation, Lead Plaintiff had the benefit of highly experienced counsel who have a long and successful track record representing investors in similar lawsuits. *See* Robbins Geller Decl., Ex. F; Johnson Fistel Decl., Ex. E. Accordingly, this factor is easily satisfied and supports final approval.

#### 2. The Settlement Was Negotiated at Arm's Length

The Rule 23(e)(2)(B) factor (whether the settlement was negotiated at arm's length) and the first *Reed* factor (the existence of fraud or collusion behind the settlement) strongly support approval. These factors, including the arm's-length nature of the Settlement negotiations, are satisfied for the reasons stated above in §IV.B.

### 3. The Settlement Is Fair and Adequate Given the Complexity, Costs, and Delay of Trial and Appeal

The Rule 23(e)(2)(C)(i) factor looks at the relief being provided to the class considering the costs, risks, and delay of trial and appeal. Likewise, the second *Reed* factor looks at the complexity, expense and likely duration of the litigation. Both support approval of the Settlement. Defendants adamantly denied liability throughout the Litigation and would continue to do so. Continued litigation would require the expenditure of substantial additional time and money. Assuming Lead Plaintiff was successful in opposing Defendants' pending motion for judgment on the pleadings, discovery had not yet been completed and Defendants were likely to raise similar issues at summary judgment. Moreover, trial would take weeks, involving the introduction of hundreds of exhibits with dry financial matters and a battle of the experts regarding falsity, materiality, causation, and damages. While Lead Counsel were prepared to litigate through trial, it cannot be disputed that achieving a litigated verdict in this action would have involved serious questions of collectability and required an additional substantial investment of time and resources. *See Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010) ("When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened."). Even if Lead Plaintiff were to succeed at trial, and assuming *arguendo* the collectability issue was overcome, it is extremely probable that Defendants would appeal any judgment, which would extinguish and/or delay any potential recovery. *See Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *19 (N.D. Tex. Nov. 8, 2005) (complexity and length of continued litigation supported approval of settlement given that even "if Plaintiffs were to succeed at trial, they still could expect a vigorous appeal by Defendants and an accompanying delay in the receipt of any relief"). In contrast, the Settlement provides an immediate and substantial $9.875 million recovery for the Settlement Class without exposure to the risk, expense, and delay of continued litigation. Accordingly, this factor supports final approval of the Settlement.

**4. The Stage of the Proceedings Warrants Final Approval**

The third *Reed* factor also weighs in favor of final approval. "Under [this] factor, the key issue is whether 'the parties and the district court possess ample information with which to evaluate the merits of the competing positions.'" *Heartland*, 851 F. Supp. 2d at 1064; *see also In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2009 WL 512081, at *12 (E.D. La. Mar. 2, 2009) ("The question is but . . . whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed or continuing to litigate it.").

As discussed above, by the time the Settlement was reached, the parties had litigated multiple rounds of special exceptions briefing and a writ of mandamus to the Texas Court of Appeals; engaged in extensive fact discovery; briefed, and were prepared to argue Lead Plaintiff's motion to remand or abstain; and extensively briefed the disputed issues in connection with Defendants' motion for judgment on the pleadings. Thus, the Settlement comes after nearly two years of hard-fought litigation in state trial and appellate courts and federal bankruptcy courts. There is no question that at the time the Settlement was reached, the parties had sufficient information to competently assess the strengths and weaknesses of the parties' respective claims and defenses. Accordingly, this factor also favors final approval.

**5. The Risk of Further Litigation Supports Final Approval**

The fourth *Reed* factor supports final approval because Lead Plaintiff recognizes that although there is substantial evidence to support her claims, there are also substantial risks in establishing liability and damages at trial. *See* Joint Decl., ¶¶73-83; *see also OCA*, 2009 WL 512081, at *13 (approving settlement where plaintiffs faced substantial risks in establishing elements of securities law violations); *Schwartz*, 2005 WL 3148350, at *18 (plaintiffs' "uncertain prospects of success through continued litigation" supported approval of settlement). Considering all the

circumstances and risks Lead Plaintiff would have faced if she continued to litigate this case through a decision on, *e.g.*, the pending motion for judgment on the pleadings, anticipated summary judgment briefing, and then to trial and appeal(s), Lead Plaintiff and Lead Counsel concluded that the Settlement – which provides an immediate and certain payment of $9.875 million – was in the best interest of the Settlement Class. Thus, this factor strongly supports the Settlement.

**6. The Settlement Is Within the Range of Reasonableness**

The fifth *Reed* factor considers "whether the terms of the settlement 'fall within a range of reasonable recovery, given the likelihood of the plaintiffs' success on the merits.'" *Billetteri v. Securitiesica, Inc.*, No. 3:09-cv-01568-F, 2011 WL 3586217, at *12 (N.D. Tex. Aug. 4, 2011). Given the risks discussed above and in the Joint Decl., ¶¶73-83, including the risks associated with two defendants' bankruptcies, the pending motion for judgment on the pleadings, and eventual trial and possible appeal(s), the $9.875 million cash settlement is well within the range of reasonableness. Moreover, the $9.875 million recovery represents a substantial portion of the reasonably recoverable damages for the Settlement Class.

**7. Lead Counsel, Lead Plaintiff and Settlement Class Members Support Final Approval**

The sixth *Reed* factor (the opinions of class counsel, class representatives, and absent class members) also supports final approval of the Settlement. "[W]here the parties have conducted an extensive investigation, engaged in significant fact-finding and Lead Counsel is experienced in class-action litigation, courts typically 'defer to the judgment of experienced trial counsel who has evaluated the strength of his case.'" *Schwartz*, 2005 WL 3148350, at *21; *see also DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007) ("The endorsement of class counsel is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims."). Given that the Settlement

provides a substantial recovery while avoiding the risks of further litigation, it is Lead Counsel's opinion that it is possible that a better result might not be obtained. Joint Decl., ¶¶8, 83.

Additionally, Lead Plaintiff, an investor who has monitored and tracked Lead Counsel's work throughout the Litigation, endorses the Settlement. *See* Declaration of Carol Glock in Support of Lead Plaintiff's Motion for: (1) Final Approval of Class Action Settlement; (2) Approval of Plan of Allocation; (3) Award of Attorneys' Fees and Expenses; and (4) Award to Lead Plaintiff Pursuant to 15 U.S.C. §77z-1(a)(4) ("Glock Decl."), ¶5, submitted herewith.

**8. The Remaining Rule 23(e)(2) Factors Are Also Met**

**a. The Proposed Method for Distribution Is Effective**

As demonstrated below in §V, the proposed notice plan and claims administration process (Rule 23(e)(2)(C)(ii)) are effective and sound. The notice plan included direct mail notice to all those who could be identified with reasonable effort supplemented by the publication of the Summary Notice in *The Wall Street Journal* and over *Business Wire*. Murray Decl., ¶¶11-12. In addition, the key settlement documents are posted on a designated website, including the Stipulation, Notice, Proof of Claim and Release, and Notice Order. *Id.*, ¶14.[5]

The claims process is also effective and the standard claim form requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. *Id.*, Ex. A (Proof of Claim and Release). The Plan of Allocation will govern how Settlement Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants.

**b. Attorneys' Fees**

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As discussed below, Lead Plaintiff's Counsel seek an award of

[5] Upon filing, all briefs and declarations filed in support of the Settlement will be posted to the Settlement website.

attorneys' fees of 33% of the Settlement Amount and expenses of $205,170.61, plus interest on both amounts, which is in line with other securities settlements approved in the Fifth Circuit.[6]

**c. There Are No Other Agreements Besides Opt-Outs**

Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement made in connection with the proposed Settlement. As disclosed in the Stipulation (¶7.3), and in the memorandum in support of Lead Plaintiff's preliminary approval motion (ECF No. 8 at 17), the Settling Parties have entered into a standard supplemental agreement which provides that if Settlement Class Members opt out of the Settlement such that the number of shares of FTSI common stock represented by such opt outs equals or exceeds a certain amount, Settling Defendants have the option to terminate the Settlement. While identified in the Stipulation (*id.*), the ***specific*** terms of the supplemental agreement are confidential. *See Halliburton*, 2018 WL 1942227, at *5 (granting final approval of securities class action that included a supplement confidential agreement permitting settlement termination in the event of exclusion requests by a certain portion of the class).

**d. Settlement Class Members Are Treated Equitably**

The Plan of Allocation, discussed below in §V, which is set out in the Notice, explains how the Settlement proceeds will be distributed among Authorized Claimants. It provides formulas for calculating the recognized claim of each Settlement Class Member, based on each such person's purchases or acquisitions of FTSI common stock traceable to FTSI's IPO and when and if they were sold. Lead Plaintiff, like all other Settlement Class Members, will be subject to the same formulas for distribution of the Settlement as described in the Plan of Allocation.

---

6 The Stipulation (¶6.2) provides that attorneys' fees and expenses awarded by the Court shall be paid to Lead Counsel upon entry of judgment and an order awarding such fees and expenses.

## V. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). The standard for approving a plan of allocation is the same as the standard for approving the settlement: the plan must be "fair, adequate, and reasonable" and must not be "'the product of collusion between the parties.'" *Chicken Antitrust*, 669 F.2d at 238. This analysis is to be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *Id*. In addition, an allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel. *Taft v. Ackermans*, No. 02 CIV. 7951 (PKL), 2007 WL 414493, at *9 (S.D.N.Y. Jan. 31, 2007). Lead Counsel prepared the Plan of Allocation, fully disclosed in the Notice (Murray Decl., Ex. A (Notice at 10-12)), after careful consideration and analysis, and without reference to any particular trading patterns of the Lead Plaintiff.

This method of allocation is fair, reasonable and adequate and, to date, not a single Settlement Class Member has filed an objection. Accordingly, the Plan of Allocation should be approved.

## VI. AWARD OF ATTORNEYS' FEES

### A. Lead Counsel Is Entitled to an Award of Attorneys' Fees from the $9.875 Million Common Fund Created in the Settlement

The Supreme Court and the Fifth Circuit have long recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939); *Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981). In addition to providing just

compensation, awards of attorneys' fees from a common fund also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons and to discourage future misconduct of a similar nature. *See, e.g.*, *Dolgow v. Anderson*, 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968). Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, are "an essential supplement to criminal prosecutions and civil enforcement actions." *Tellabs, Inc. v. Major Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

**B. The Court Should Award a Percentage of the Common Fund**

The Supreme Court has consistently held that where a common fund has been created for the benefit of a class because of counsel's efforts, the award of counsel's fee should be determined on a percentage-of-the-fund basis. *See, e.g.*, *Internal Imp. Fund Trs. v. Greenough*, 105 U.S. 527, 532 (1881); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 124-25 (1885); *Sprague*, 307 U.S. at 166-67.

The Fifth Circuit also approves the percentage method, finding that it "brings certain advantages . . . because it allows for easy computation" and "aligns the interests of class counsel with those of class members." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643-44 (5th Cir. 2012). The Court in *Dell*, 669 F.3d at 643, endorsed "the district courts' continued use of the percentage method cross-checked with the *Johnson* factors," and this Court in *DiGiacomo v. Plains All American Pipeline*, No. Civ.A.H-99-4137, 2001 WL 34633373, at *7 (S.D. Tex. Dec. 19, 2001), applied the percentage of the fund method, accompanied by a lodestar cross-check. *See also Schwartz*, 2005 WL 3148350, at *26 ("there is a strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery" employing the percentage-of-recovery method); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 966-67 (E.D. Tex. 2000) (listing additional class action cases).

The percentage method of calculating fees is also appropriate in securities cases like this one that are governed by the PSLRA. The PSLRA explicitly authorizes the percentage method in calculating fees in securities actions. 15 U.S.C. §78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."); *see Dell*, 669 F.3d at 643 ("Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation.").

Here, Lead Counsel are seeking a 33% fee. As discussed below, the requested percentage is consistent with fee awards in comparable securities class actions in this Circuit and is reasonable under the facts of this case, where counsel expended 6,342 hours with a lodestar totaling $4,016,507.

### C. The Requested Percentage Is Fair and Reasonable and Is Consistent with Fee Awards in Comparable Cases from This Circuit

An appropriate court-awarded fee is intended to approximate what counsel would receive if they were offering their services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 33% of the recovery. *See Blum v. Stenson*, 465 U.S. 886, 904 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (Brennan, J., concurring).

The requested 33% fee award, which was approved by Lead Plaintiff (*see* Glock Decl., ¶6), is well within the range of percentage fees awarded in the Fifth Circuit in securities class actions like this one. *See, e.g.*, *Parmalee v. Santander Consumer USA Holdings Inc.*, No. 3:16-cv-00783-K, 2019 WL 2352837, at *1 (N.D. Tex. June 3, 2019) (awarding 33.33%); *Singh v. 21Vianet Grp., Inc.*, No. 2:14-cv-00894-JRG-RSP, 2018 WL 6427721, at *1 (E.D. Tex. Dec. 7, 2018) (awarding 33.30%); *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 445 (S.D. Tex. 1999) ("Class counsel and

experts both reported to the Court that it is customary in large, complex commercial litigation for contingency fees to be set at 33 to 40%."); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1133 (W.D. La. 1997) (awarding 36% of the common fund as fee and noting: "Usually 50 percent of the fund is the upper limit on a reasonable fee award from a common fund to assure that fees do not consume a disproportionate part of the recovery obtained for the class, though somewhat larger percentages are not unprecedented."); *Garza v. Sporting Goods Props., Inc.*, No. CIV. A. SA-93-CA-108, 1996 WL 56247, at *31 (W.D. Tex. Feb. 6, 1996) (noting, "[t]his Court concurs that 33 1/3% to 40% is the customary contingency fee range" and awarding a 39.7% fee); *In re Prudential-Bache Energy Income P'ships Sec. Litig.*, MDL No. 888, 1994 WL 202394, at *6 (E.D. La. May 18, 1994) ("Customary fees in common fund cases appear to range from 20% to 40%.").

In *DiGiacomo*, this Court awarded a 30% fee in the two related securities class actions that settled for a combined amount of $29.5 million. 2001 WL 34633373, at *4 & *13 (No. Civ. A.H.-99-4137 and Civ. A.H.-99-4212). While Lead Counsel seek a slightly higher percentage here, the lodestar multiplier in *DiGiacomo* was 5.3 (*id.* at *11) versus a ***negative*** 0.81 multiplier here, as discussed below.

### D. The *Johnson* Factors Confirm that the Requested Fee Is Reasonable

An analysis of the factors identified by the Fifth Circuit in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), confirms the requested 33% fee award is reasonable and appropriate. The *Johnson* factors are: (1) time and labor required; (2) novelty and difficulty of the issues; (3) skill required to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of professional relationship with the client; and (12) awards in similar cases. *Id.* Knowing that the relevance of

each of the *Johnson* factors will vary in any particular case, the Fifth Circuit left it to the trial court's discretion to apply those factors in view of the circumstances of a particular case rather than requiring a rigid application of each factor. *Brantley v. Surles*, 804 F.2d 321, 325-26 (5th Cir. 1986).[7]

**1. Time and Labor Required**

Lead Counsel committed considerable resources and time investigating, and prosecuting this Litigation, expending 6,342 hours with a lodestar of $4,016,507.[8] *First*, Lead Counsel conducted a diligent investigation to build a framework for a successful securities fraud case. And Lead Counsel overcame multiple pleadings challenges, a writ of mandamus to the Texas Court of Appeals and the removal of this action to bankruptcy court while a further petition to the Texas Supreme Court was pending. Lead Counsel also obtained and reviewed approximately 250,000 pages of documents in discovery. *Second*, the legal obstacles to recovery were significant, and a recovery was obtained only because of the skill and tenacity of Lead Counsel. *Third*, and perhaps most importantly given the Litigation's history, the services provided by Lead Counsel were successful, resulting in a highly favorable recovery for the Settlement Class. Defendants vigorously litigated this case for almost two years, and at virtually every stage of the Litigation, Lead Counsel successfully responded to Defendants' strategies and tactics, while aggressively building Lead Plaintiff's case on the merits. Joint Decl., ¶¶13-52. The requested fee is warranted here.

**2. Novelty and Difficulty of the Issues**

It is widely recognized that securities class actions are complex and difficult and that "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and

---

7 The time limitations imposed by the client and the nature and length of the professional relationship with the client do not pertain to this case and do not warrant analyses.

8 The requested fee represents a significant discount to Lead Plaintiff's Counsel's lodestar.

smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009); *see also OCA*, 2009 WL 512081, at *21 ("Fifth Circuit decisions on causation, pleading and proof at the class certification stage make PSLRA claims particularly difficult."); *Schwartz*, 2005 WL 3148350, at *29 ("Federal Securities class action litigation is notably difficult and notoriously uncertain.").

The Settlement Class faced significant risks to establishing liability and damages. *See* Joint Decl., ¶¶73-83. From the outset, this action was an especially difficult and highly uncertain securities case, with no assurance that it would survive Defendants' attacks on the pleadings, motion for judgment on the pleadings, trial, and appeals, and certainly no assurance that Defendants would have the ability to fund either a judgment or a settlement. There were many difficult questions presented in the Litigation, including Lead Plaintiff's standing, establishing the falsity of Defendants' statements, causation, and damages. Even if Lead Plaintiff successfully proved liability, there were also complex issues concerning the calculation and amount of damages. Despite the novelty and difficulty of the issues raised, Lead Counsel secured a highly favorable result for the Settlement Class. As a result, this factor strongly supports the requested award.

### 3. Skill Required: The Experience, Reputation, and Ability of the Attorneys

The third and ninth *Johnson* factors – the skill required and the experience, reputation, and ability of the attorneys – also support the requested fee award. Here, Lead Counsel performed their work diligently and skillfully, and achieved a substantial recovery for the Settlement Class. Lead Counsel have many years of experience in complex civil litigation, particularly the litigation of securities and other class actions, and have achieved significant acclaim for their work, as set forth in the firm resumes accompanying the Robbins Geller and Johnson Fistel declarations.

Lead Counsel's experience in the field also allowed them to identify and address the complex issues involved in this case and formulate strategies to effectively prosecute the case. *See Schwartz*,

2005 WL 3148350, at *30 ("Plaintiffs' counsel demonstrated that notwithstanding the barriers erected by the PSLRA, they would develop evidence to support a convincing case."). But for Lead Counsel's efforts, the Settlement Class' claims might have been dismissed at the pleading stage. Instead, Lead Counsel were able to secure a Settlement of $9.875 million, representing a very good result for the Settlement Class.[9]

Lead Counsel's ability to develop this case and negotiate the Settlement in the face of such formidable opposition confirms the quality of Lead Counsel's representation.

#### 4. Preclusion of Other Employment

Lead Plaintiff's Counsel spent over 6,300 hours with a lodestar of $4,016,507 prosecuting this Litigation on behalf of the Settlement Class. Those hours were time that counsel could have devoted to other matters. To the extent applicable, this factor also supports the requested percentage.

#### 5. Whether the Fee Is Fixed or Contingent

Lead Counsel undertook the Litigation on a contingent fee basis, assuming a substantial risk that the action would yield no recovery and leave counsel uncompensated. Lead Counsel's extensive time and effort devoted to litigating the action in the face of a myriad of risks, strongly supports the fee requested. *See Klein*, 705 F. Supp. 2d at 678 (where "class counsel represented the class on a contingent-fee basis, with no guarantee of any recovery . . . [t]he contingent nature of the fee favors an increase" in the fee); *OCA*, 2009 WL 512081, at *22 ("the risk plaintiff's counsel undertook in litigating this case on a contingency basis must be considered in its award of attorneys' fees, and thus an upward adjustment is warranted").

---

[9] The quality of opposing counsel is also important in evaluating the quality of services rendered by Lead Counsel. *See, e.g.*, *In re Aetna Inc. Sec. Litig.*, MDL No. 1219, 2001 U.S. Dist. LEXIS 68, at *45-*46 (E.D. Pa. Jan. 4, 2001). In this case, Defendants' counsel are some of the largest firms, and all are comprised of capable, experienced, and highly skilled lawyers. *See Schwartz*, 2005 WL 3148350, at *30 (finding that skill factor supported the fee award because, *inter alia*, opposing counsel were "highly experienced lawyers from prominent and well-respected law firms").

Indeed, the risk of no recovery in complex cases of this type is very real. There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. Even plaintiffs who get past dispositive motions and succeed at trial may find their judgment overturned on appeal or on judgment notwithstanding the verdict.[10] Counsel was faced with this very real possibility here.

Lead Counsel have received no compensation throughout the course of this Litigation and have incurred significant expenses in prosecuting this Litigation for the benefit of the Settlement Class. Any fee or expense award has always been at risk and completely contingent on the result achieved. Thus, the contingent nature of the Litigation supports the requested percentage.

**6. The Amount Involved and Results Obtained**

The benefit conferred on the class and the result achieved is an important factor in setting a fair fee. *See, e.g.*, *In re Terra-Drill P'ships Sec. Litig.*, 733 F. Supp. 1127, 1128 (S.D. Tex. 1990) (noting that the *Johnson* factors emphasize "the results obtained"). Here, Lead Counsel have achieved a highly favorable recovery of $9.875 million for the benefit of the Settlement Class. The result achieved, given the substantial risks, is significant and supports the requested fee.

**7. The Undesirability of the Case**

The tenth factor, undesirability of the case, also supports the fee requested here. Securities cases have generally been recognized as "undesirable" due to the financial burden on counsel and the time demands of litigating class actions. *Garza*, 1996 WL 56247, at *33. The risks Lead Counsel

---

[10] *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (major portion of plaintiffs' verdict reversed on appeal); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) ($81 million jury verdict reversed on appeal on loss causation grounds and judgment entered for defendant); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533 (S.D.N.Y. 2011) (after jury verdict for plaintiff, court significantly reduced scope of class by amending class definition to exclude purchasers of ordinary shares); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' post-trial motion for judgment as a matter of law following jury verdict for plaintiff).

faced must be assessed as they existed at the time counsel undertook the Litigation and not in light of the favorable settlement ultimately achieved. *See, e.g.*, *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991) (the riskiness of a case must be judged *ex ante* not *ex post*).

This was never an easy case and there was always a high risk of no recovery. No other shareholder filed a case and no other counsel sought to be appointed lead counsel. Had Lead Plaintiff and Lead Counsel not been tenacious in bringing and pursuing this Litigation, it is doubtful that Settlement Class Members would have recovered anything. Thus, the "undesirability" of the Litigation supports the requested percentage.

**8. The Requested Fee Is Supported by Awards in Similar Cases.**

As discussed above in §VI.C, a 33% fee is consistent with fee percentages that have been repeatedly awarded by courts in this Circuit.

**E. Settlement Class Member Reaction**

Although not formally noted in the case law for this jurisdiction as a factor for the Court's consideration in determining an award of attorneys' fees, courts throughout the country have found that relatively few or no objections from the class to the attorneys' fees requested supports the reasonableness of the requested attorneys' fees.[11] To date, there have been no objections to Lead Counsel's fee request,[12] which is important evidence that the requested fee is fair. *See, e.g.*, *Halliburton*, 2018 WL 1942227, at *12 ("Although the lack of objections is not a *Johnson* factor, the Court finds it relevant in considering the reasonableness and fairness of the award.").

---

[11] *See, e.g.*, *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (district court did not abuse its discretion by finding that absence of substantial objections by class members to fee request weighed in favor of approval); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) ("The reaction by members of the Class is entitled to great weight by the Court.").

[12] Should any objections be received prior to the March 1, 2021, deadline to submit objections, Lead Counsel will address them in their reply brief, to be filed no later than April 5, 2021.

## VII. LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE SETTLEMENT

Attorneys who create a common fund for the benefit of a class are entitled to payment from the fund of reasonable litigation expenses and charges. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, No. Civ. A. H-01-3624, 2004 WL 1900294, at *3 (S.D. Tex. Aug. 5, 2004). *See DiGiacomo*, 2001 WL 34633373, at *13 (awarding litigation expenses in addition to 30% attorneys' fee, noting that "[n]o party has objected to the amount of the expenses" and that such expenses were reasonable); *Faircloth v. Certified Fin. Inc.*, No. Civ.A. 99-3097, 2001 WL 527489, at *12 (E.D. La. May 16, 2001) (awarding costs in addition to the percentage fee).

Lead Plaintiff's Counsel seek payment of their reasonable expenses and charges of $205,170.61 for prosecuting this Litigation on behalf of the Settlement Class. *See* Robbins Geller Decl., ¶¶5-6; Johnson Fistel Decl., ¶¶7-8; Kendall Decl., ¶¶5-6. These expenses were necessary for the investigation and prosecution of the case. *Id.* The expenses include, *e.g.*, mediation fees, bankruptcy counsel's fees, travel, discovery database hosting and document management, and other incidental expenses directly related to the prosecution of this Litigation. Accordingly, all these expenses are reasonable and were necessarily incurred in the prosecution of the Litigation and therefore should be paid from the Settlement Fund.

## VIII. LEAD PLAINTIFF'S AWARD UNDER 15 U.S.C. §77z-1(a)(4)

The PSLRA allows an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. §77z-1(a)(4). While "[c]ourts commonly permit payments to class representatives above those received in settlement by class members generally," *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012) (Rosenthal, J.), such awards must be reasonable under the circumstances and not unfair to other class members.

*Smith v. Tower Loan of Mississippi, Inc.*, 216 F.R.D. 338 (S.D. Miss. 2003), *aff'd on other grounds*, 91 Fed. Appx. 952 (5th Cir. 2004).

Factors considered in connection with such awards are the actions the plaintiff took to protect the interests of the class, the degree to which the class benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation. *Slipchenko v. Brunel Energy, Inc.*, 2015 WL 338358, at *13 (S.D. Tex. Jan. 23, 2015) (Rosenthal, J.) (approving $12,000 incentive award to be split among three class representatives); *In re Heartland*, 851 F. Supp. 2d at 1089.

As set forth in the Glock Declaration (filed herewith), Lead Plaintiff expended significant time and effort in directing the prosecution of this Litigation and played a vital role in securing this favorable Settlement for the Settlement Class. Glock Decl., ¶¶2-4. And, to date, no Settlement Class Member has objected to the proposed award to Lead Plaintiff. Accordingly, Lead Plaintiff requests $2,500 pursuant to 15 U.S.C. §77z-1(a)(4).

## IX. CONCLUSION

Lead Plaintiff and Lead Counsel respectfully request that the Court approve: the Settlement and Plan of Allocation; Lead Counsel's request for an award of attorneys' fees of 33% of the Settlement Amount and payment of expenses of $205,170.61, including interest earned on both amounts; and an award of $2,500 to Lead Plaintiff, as allowed by the PSLRA.

DATED: February 17, 2021

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
SCOTT H. SAHAM (*pro hac vice*)
BRIAN O. O'MARA (*pro hac vice*)
KEVIN S. SCIARANI (*pro hac vice*)

*s/ Scott H. Saham*
SCOTT H. SAHAM

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
scotts@rgrdlaw.com
bomara@rgrdlaw.com
ksciarani@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 1450
Dallas, TX 75219
Telephone: 214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

JOHNSON FISTEL, LLP
MICHAEL I. FISTEL, JR.
WILLIAM W. STONE
40 Powder Springs Street
Marietta, GA 30064
Telephone: 470/632-6000
770/200-3101 (fax)
michaelf@johnsonfistel.com
williams@johnsonfistel.com

JOHNSON FISTEL, LLP
BRETT M. MIDDLETON
655 West Broadway, Suite 1400
San Diego, CA 92101
Telephone: 619/230-0063
619/255-1856 (fax)
brettm@johnsonfistel.com

LOWENSTEIN SANDLER LLP
MICHAEL S. ETKIN (*pro hac vice*)
ANDREW BEHLMANN
One Lowenstein Drive
Roseland, NJ 07068
Telephone: 973/597-2500
973/597-2400 (fax)
metkin@lowenstein.com
abehlmann@lowenstein.com

Attorneys for Plaintiff

## CERTIFICATE OF CONFERENCE

This certifies that on February 16, 2021, Brian O. O'Mara spoke by telephone and corresponded by electronic mail with John Lawrence, counsel for defendants FTS International, Inc., Maju Investments (Mauritius) Pte Ltd, Michael J. Doss, Lance Turner, Goh Yong Siang, Boon Sim, Ong Tiong Sin, and Carol J. Johnson, about Lead Plaintiff's Motion For (1) Final Approval of Class Action Settlement; (2) Approval of Plan of Allocation; (3) Award of Attorneys' Fees and Expenses; and (4) Award to Lead Plaintiff Pursuant to 15 U.S.C. §77z-1(a)(4). Mr. Lawrence indicated that defendants do not oppose approval of the settlement and plan of allocation, and take no position with respect to Lead Counsel's request for an award of attorneys' fees and expenses and award to Lead Plaintiff.

*s/ Scott H. Saham*
SCOTT H. SAHAM

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on February 17, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the Electronic Mail Notice List.

*s/ Scott H. Saham*
SCOTT H. SAHAM

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: scotts@rgrdlaw.com